JOHN GUYER *vs.* MAYNARD, Ex'r of NETH.—*Dec.* 1834.

By the will of W, the remainder of his real estate was devised to a residuary legatee, and his executors were directed to sell such parts of his real and personal estate as they might think proper and necessary, for the payment of debts and legacies. Under this will the executors possess only a naked power to sell, and until the exercise of that power, the estate passed in fee simple to the devisee, who *only* was authorized to receive the rents and profits. An order of the court of Chancery to sell the real property founded upon an allegation of the inadequacy of the personal estate to pay debts and legacies, without any reference to the rents and profits of the property ordered to be sold as necessary to pay debts or legacies, *held* not to affect the devisee's right to them.

APPEAL from Chancery.

On the 3d of January, 1816, *James Williams, the elder,* made and published his last will and testament, in which, after directing that his debts should be paid, and giving several legacies,—there are the following clauses:—

"I give and bequeath to my nephew, *James Williams,* of *Philadelphia,* all the remainder and residue of my estate, both real and personal, of every kind and description, that I may die possessed of, or that I may be in any way entitled to, in law or equity."

"My executors will sell such part, or parts of my real and personal property, as they may think proper and necessary, to enable them to pay off the legacies as soon as convenient; and all the legacies that are not paid within eighteen months after my decease, are to be paid with interest from that time."

The said *James Williams*, the residuary devisee, and legatee, the appellant, and *Lewis Neth*, the testator of the appellee, were appointed executors of the will.

After the death of the testator, which occurred in April, 1818, letters testamentary on his estate were granted to *Williams* and *Neth*, *Guyer* (the appellant) the other party named having declined; and upon their petition filed on the 20th of September, 1825, setting forth the inadequacy of the personal estate to pay the debts and legacies of the testator, the Chancellor on that day, passed an order appointing *Neth* one of the executors, a trustee to make sale of the real estate, as directed by the testator's will.

He made sale, accordingly, of various portions of the same, and his sales were duly reported to, and ratified and confirmed by the court.

After settling several accounts in the Orphan's court, in conjunction with his co-executor, *Williams*, and as surviving executor after his death; by which the personal estate appeared to be considerably overpaid; he himself died, leaving the appellee, *Samuel Maynard*, his executor, who on the 12th of December, 1832, filed a petition in the cause, setting forth the above facts, and stating further, that from the date of the letters testamentary to *Williams* the younger and *Neth*, to the periods of selling the real estate of their testator, they had received the rents and profits of said real estate, and had paid large sums for repairs, taxes and other charges, for which the petitioner proposed to render an account to the court of Chancery.

The Chancellor, on the same day, passed an order referring the case to the auditor, with directions to state an account as prayed, subject to exceptions, to be filed within three months after the date of the auditor's report.

The auditor accordingly stated and reported several accounts, to which a number of exceptions were filed by the appellant, *Guyer*, as a creditor and legatee under the will of *Williams;* but as all the points of controversy growing out of them were compromised, except one, before

the decision of the case of this court, it is only necessary to advert to that one.  It charged error in the auditor's accounts, in making the balance of the rents and profits of the real estate, payable to the residuary legatee, ( *Williams* ) to the exclusion of creditors.   *Bland,* Chancellor, on the 4th of June, 1833, confirmed the account in this respect, and the appellant, thereupon, appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN DORSEY and CHAMBERS, Judges.

*Pinkney* for the appellant.

The balance due for the rents and profits of the real estate received by *Neth,* was assets in his hands, and chargeable to him as such.   4 *Bac. Abr.* 281.   2 *Pr. Wms.* 309. 2 *Burr. Rep.* 10, 27.

But if the whole amount thus received was not assets, at all events, what was received after the decree of September, 1825, directing a sale of the real estate, was—for after that decree, the rights of the devisee were divested, and if *Neth,* the trustee, was unable to effect a sale, he should have rented the property for the benefit of the creditors and legatees.

*Johnson* and *Alexander* for the appellee.

The rents and profits of the real estate received from the death of the elder *Williams,* until its sale, were clearly the right of the residuary devisee.   No estate whatever, vested in the executors under the will, who were clothed simply with the naked authority to sell, and consequently, until sold, the title devolved on the residuary devisee, accompanied with the incidental right to the rents and profits. *Coke Lt.* 113. (*a*)   1 *Caine's Cases,* 16.   4 *H. and McH.* 73.   1 *Bro. Ch. R.* 311.   2 *Saund. Rep.* 337, *note* 8. 1 *Mad. Ch. Pr.* 596.

Land directed to be sold for a special purpose, is not converted into personal estate, and the rents and profits which

accrue in the interim belong to the heir. 1 *Mad. Ch. Pr.* 598. The argument upon the other points is omitted.

Dorsey, J. delivered the opinion of the court.

By the agreement of the parties, recently filed in this court, all the various questions which have been discussed, are withdrawn from our consideration, except that which seeks a reversal of the Chancellor's order appealed from, on the ground that the appellee is not made to account for the balance of rents and profits accruing from the real estate of *James Williams*, the testator, and received after his death by his executor, *Neth*.

In the will of *James Williams*, his real estate is not devised *to his executors*, to be by them sold; but is given to his residuary devisee, his nephew, with a power to his executors to sell such parts as they might think proper and necessary, for the payment of debts and legacies. The executors possess only a naked power to sell; until the exercise of which, the estate passes in fee simple to the devisee; who, only under the will, is authorized to receive the rents and profits thereof. Should they have been collected by his executor, *Neth,* his receipt of them is without authority, and he must account to the devisee, or his representatives. And there is no difference in this respect, between rents received before, and after the chancellor's decree of September, 1825. The only office of that decree, as far as the delegation of power was concerned, being to clothe one executor with the authority invested by the testator in three.

In deciding the question submitted to us, we have based our opinion exclusively upon the facts, as presented by the record. Whether as an abstract question, upon a legatee's bill, properly framed, with the necessary averment of the insufficiency of the real and personal assets, exclusive of these rents to pay debts and legacies, the appellee could be made to account for them, we have formed, and mean to

express no opinion ; nor how far, in the event of his being so accountable, that accountability is discharged, by the alleged amounts due him from *James Williams*, the devisee.

THE ORDER OF THE CHANCELLOR AFFIRMED, BUT

WITHOUT COSTS IN EITHER COURT.