EDWIN R. DOWNES, REGISTER OF WILLS, *v.* SAFE DEPOSIT AND TRUST COMPANY.

[No. 19, January Term, 1929.]

88

Decided March 21st, 1929.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Willis R. Jones, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *J. Hubner Rice; Assistant Attorney General,* on the brief, for the appellant.

*Raymond S. Williams* and *Roger B. Williams,* with whom were *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

Mrs. Bridget Curran, a citizen and resident of Baltimore City, by deed of trust dated July 11th, 1919, properly recorded, conveyed the property therein described, consisting of real and personal property, to the Safe Deposit and Trust Company of Baltimore, in trust to pay the net income to her for life, and after her death to convey the corpus to her son Frank P. Curran and his wife, Barbara Curran, as tenants by the entireties absolutely and free from trust. The deed further provided that the grantor Bridget Curran "shall have the right at any time during her life, by deed executed and acknowledged as deeds of conveyance of real estate are or may be required by law to be executed and acknowledged, * * * to withdraw from this trust from time to time any portion of the corpus or principal of the property held in trust hereunder, but not more in value than five thousand dollars

in any one year, whereupon it shall become the duty of Safe Deposit and Trust Company of Baltimore, trustee, to deliver and transfer to said Bridget Curran, to be held by her, her heirs, executors, administrators and assigns, absolutely, free and clear of any trust, so much of said corpus or principal as may be specified in such deed of withdrawal and authorized to be withdrawn by the provisions of this deed." In said deed it was also provided that the trustee should have full power and authority to change the investments of the property or securities, and for that purpose to make sale of any of the property or interest therein held by it as such trustee, without any obligation on the part of the purchaser to see to the application of the purchase money, and should have power to sell all or any part of the securities or property for the purpose of more convenient division among or transfer to the parties who from time to time might become entitled to a transfer or delivery thereof according to the terms of the deed.

At the time of the execution of the deed in 1919, Mrs. Bridget Curran was eighty-nine years of age, and she died October 31st, 1927, at the age of ninety-seven, without having withdrawn any part of the corpus of the trust estate. At the time of her death her son Frank P. Curran was fifty-eight years of age and his wife Barbara Curran was fifty-four years of age. At this time the property held by the trustee consisted of real and personal property of the value of $66,024.46, this appraisement and valuation having been made by two appraisers appointed by the Orphans' Court of Baltimore City. The trustee made inquiry of the Register of Wills of Baltimore City whether there was any collateral inheritance tax due the State of Maryland upon the interest of Mrs. Barbara Curran, the daughter-in-law of Mrs. Bridget Curran. The Register of Wills referred that inquiry to the Attorney General, who rendered an opinion holding that the interest of Barbara Curran was subject to a collateral inheritance tax. The trustee insisted that by a proper construction of the law no such tax was due on the interest of Barbara Curran; whereupon, after said appraisement, the

Orphans' Court passed an order that the value of the interest of Barbara Curran, as a tenant by the entireties with her husband in said property, was one-half thereof, to wit, the sum of $33,012.23, upon which a tax of five per cent., amounting to $1,650.61, was payable to the Register of Wills for the use of the State. Payment of this tax was demanded of the trustee, and refused. The matter was subsequently submitted to the Baltimore City Court on a case stated, and tried before the court. The verdict and judgment being for the defendant, the State has appealed.

The two questions presented by this appeal for our decision are: First, whether the method employed by Bridget Curran in disposing of her property is within the purview of section 124 of article 81 of the Code, making it subject to a collateral inheritance tax; and second, whether the interest which passed to Barbara Curran, as one of the tenants by the entireties, is subject to taxation, and if so, upon what valuation? The lower court answered both of these questions in the negative. The contention of the appellee is that the property of Bridget Curran in the hands of the trustee, passing to her son and daughter-in-law as tenants by the entireties, is not taxable under section 124 of article 81, because the grantor Bridget Curran did not die seized and possessed thereof; and that even if she did die seized and possessed of the property, the statute has no application to property passing to tenants by the entireties where one of such tenants is a lineal descendant of the grantor, and as such exempted by the statute. If either of these contentions is sound, the judgment would have to be affirmed. We only find it necessary to consider the first, for the reason that we are of the opinion that this estate held by the trustee is not subject to the tax claimed, without regard to whether a tenant by the entirety who is a collateral would be subject to the tax.

Section 124 of article 81 of the Code in effect provides that all estates of every kind passing from any person *who may die seized and possessed thereof,* being in this state, or any part of such estate or estates, or interest therein, transferred by deed made or intended to take effect in possession

after the death of the grantor, to any person or persons, bodies corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor, shall be subject to a tax of five per cent. This section does not mean that every estate conveyed by deed, the beneficial use of which is to take effect in possession after the death of the grantor, is subject to the tax, but only such estates of which the grantor died seized and possessed. This is the plain language of the statute, and we must give effect to all of its provisions, especially when the statute under construction is one which imposes a tax. The Legislature has declared what estates shall be subject to the collateral inheritance tax. It has not declared that all estates are so subject, but only certain estates which the Legislature itself defines. The estates upon which the beneficiary is required to pay a tax must have certain characteristics, all of which must be found to exist before the tax is applicable. The Legislature has declared that property situate in this state, of which the grantor, donor, or devisor is seized and possessed at the time of his death, which by any instrument is transferred directly or through the intervention of a trustee by deed, gift, or will, so that a collateral, as defined in the statute, is to take possession thereof at any time after the death of the grantor or devisor, is liable to the tax. In other words, the property must be such as is to take effect in possession after the death of the grantor; it must be property located within the state; and it must be property of which the grantor died seized and possessed.

In *State v. Fusting,* 134 Md. 349, the one point considered by the court was whether or not the property there sought to be taxed was in the State of Maryland. The court there said: "It is only upon the transmission to collateral relatives of property situated in this state of which the decedent dies seized and possessed that the tax is imposed." While, as stated, the point particularly involved was whether or not the property was in the state, nevertheless the court recognized that the statute does not impose a tax upon the

transmission to collateral relatives of property of which the decedent does not die seized and possessed.

In the case of *De Bearn v. Winans,* 111 Md. 434, the facts were that Mr. Winans, on the eve of his daughter's marriage to the Prince de Bearn, conveyed a large amount of property to trustees, upon trust to pay the income to his said daughter, and upon her death to transfer the corpus to whomsoever his said daughter might by her will appoint. A few days after her marriage, she exercised the power of testamentary appointment and named her husband to receive her property after her death. The prince received this property from Mr. Winans, who was the grantor in the deed of trust, because the exercise by the wife of the power of appointment given to her by the deed of trust was referable to the instrument creating the power. In that case it was clear that the tax was not applicable to the estate devised by his wife to the Prince de Bearn, for two reasons: First, because the taking effect in possession by the prince was not dependent upon the death of the grantor Winans; and, second, because Winans parted with the title and possession of the property before his death. In that case this court, speaking through Judge Schmucker, said: "The collateral inheritance tax is imposed only upon property passing to collateral relations from persons who may die seized thereof or transferred by will or by deed or other instrument intended to take effect in possession after the death of the grantor, bargainor, devisor or donor. That description does not include the property involved in the present controversy." It might be contended from the language of the court just quoted, in the use of the word "or", that any conveyance of property made and intended to take effect in possession after the death of the grantor would be subject to the tax, without regard to the question of the grantor dying seized and possessed thereof; but such, in our opinion, is not a proper construction, because the word "or" is not used in the statute in that sense; and the proper interpretation of the statute is that, in addition to the requirement that the instrument transferring the property be made and in-

tended to take effect in possession of a collateral after the death of the grantor, it must also appear that the grantor died seized and possessed thereof.

There can be no doubt that by the deed of trust in this case the property there conveyed was intended to vest in possession after the death of the grantor, in so far as any and all interests acquired by the son and daughter-in-law are concerned.

Being of the opinion that, in order to subject this estate to the collateral inheritance tax, it is necessary that the grantor be seized and possessed thereof at the time of her death, the inquiry, therefore, is, was she seized and possessed at that time? We think not. By the deed of July 11th, 1919, both the title and possession were transferred and delivered to the trustee, the trustee having the management thereof and the right to sell and dispose of all or any part thereof, for the purpose of re-investment, with the obligation upon it to pay the net income therefrom to the grantor so long as she might live, and at her death to transfer the corpus or principal thereof to her son and daughter-in-law. After the execution of the deed, the grantor had neither the possession nor the right of possession, she only having the right to demand and require the payment of the net income to her, together with an additional payment of a sum of not more than $5,000 in each and every year during the continuance of her life. This was equivalent to a requirement upon the trustee, in addition to paying the grantor the net income from the estate, to pay to her, if demanded in the method set out in the deed, a sum not exceeding $5,000 a year during her lifetime. It is argued that such a provision is equivalent to a reserved power of revocation in the deed; but we do not so regard it. If she had demanded the payment as prescribed in the deed, and the trustee had complied with such demand, as it was bound to do, it would not have been revoking the terms of the deed, but would have been complying therewith, which compliance might have resulted in the depletion of the amount of the estate, even to extinction, but would have had no effect upon what was not withdrawn. The trust and its provisions

continued in full force and operated upon whatever remained,. according to its terms. The grantor was clearly not seized of the title or in possession of the property at the time of her death. The proper actions to test the right of possession are, ejectment, when real estate is involved, and replevin,. when the recovery of possession of personal property is. sought. Certainly the grantor, Mrs. Curran, after she executed the deed of trust, could not have successfully maintained a suit in ejectment against the trustee for the real estate, nor been successful in a replevin suit for the recovery of the personal property. If not, it seems clear that at the time of her death she was not seized and possessed of the property conveyed and transferred by the deed.

The appellant relies upon the cases of *Smith v. State,* 134 Md. 473, and *Lilly v. State,* 156 Md. 94. The facts in each are vitally different from the case now before us, and therefore they are not authority for the contention of the appellant.

In the *Smith* case Judge Stockbridge, speaking for this. court, pointed out that the grantor by the deed reserved an absolute power of revocation after the period of one year from the date of the deed, and also reserved the power of testamentary disposition of the property conveyed; the principal point of similarity between that case and this being that: in each the grantor was entitled to the net income from the estate in the hands of the trustee. To hold that, because the grantor here was entitled to the net income during her life,. she died "seized and possessed" of the property, would be going much farther in sustaining the right to tax than was: done in the *Smith* case, because in that case, while the legal. title was held by the trustee, the grantor Mrs. Dickson had reserved the principal rights incident to fee simple ownership, that is to say, the right to revoke the trust and repossess herself of the property, the right to receive the revenues therefrom, and the further right to determine by her will to whom and in what proportions the property should go after her death. The effect of that decision was to hold that a person. could not evade the liability of a collateral inheritance tax upon her estate by simply conveying the legal title to a.

trustee, while still reserving and enjoying the principal rights flowing from the ownership of fee simple property.

In the *Lilly* case it was held that, while in form the grantor in the deed was Cummings, in fact Lilly was the grantor. The court went on to say: "Under the provisions of the deed of trust, Channing Lilly, the trustee, had possession of the property, could sell or mortgage same, as he saw fit, the purchasers or mortgagees, by its terms, not being required to see to the application of the purchase money, and if he should outlive his wife he was entitled to the beneficial use thereof; whether he outlived her or not, he was empowered by its provisions to dispose of the remainder by his will, and, in default of so doing, it was to become the property of his heirs at law. The deed of trust, it is true, gave the first life estate to Frances E. Lilly, his wife, but for all practical purposes he was otherwise the owner. By his last will and testament, made pursuant to the powers contained in the deed of trust, he devised the remainder, after his wife's life estate, to the appellants, which they were to enjoy in possession after his death. In form, he derived this power from the terms of the deed from James Cummings, but in reality he reserved it in himself, he being, as shown, the actual beneficial owner at the time the Cummings deed to him was made, and Cummings being only a conduit of title through which the transaction was accomplished." In addition to what was there said, there was also a power of revocation contained in the deed, which might be exercised jointly by the grantor and his wife. In the present case the power of revocation was not reserved by the grantor, and neither was there reserved the power of testamentary disposition. The absence of these two elements differentiates this case from the *Smith* and *Lilly* cases.

The purpose of the Legislature, as expressed in section 124 of article 81, was to require that a person taking the benefit of a civil right secured to him under our laws should pay a certain premium for its enjoyment. *State v. Dalrymple,* 70 Md. 295; *Fisher v. State,* 106 Md. 117; *Smith v. State, supra; Safe Dep. & Trust Co. v. State,* 143 Md. 644;

*Lilly v. State, supra.* But this requirement of the payment of a premium for its enjoyment only applies to such property as is expressly described in the statute. One of the essential conditions, as above stated, is that it must be property of which the grantor died seized and possessed. It may be argued that, by a literal construction of the wording of the statute, some property will escape taxation which would under a different interpretation be taxable. But we are here to construe a taxing statute, which imposes a necessary burden upon people and property that come within the descriptive words of the statute, and in such cases the language should be taken literally, unless to do so would clearly and unmistakably frustrate the legislative purpose and intent. In the *Smith* and *Lilly* cases this court held that, while in form the parties did not die seized and possessed of the property, nevertheless in fact and substance they did, and theretofore the tax applied. But in this case the contrary is true. Neither in form nor in fact was Bridget Curran the grantor seized of the property at the time of her death. In the case of *Bullin v. Wisconsin,* 240 U. S. 265, the Supreme Court, speaking through Mr. Justice Holmes, said: "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion, what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law." When the Legislature saw fit to limit the application of a collateral inheritance tax to property passing from any person "who may die seized and possessed thereof," it was their purpose not to have the tax apply to other property, if we are to be governed by the plain meaning of the language used, and if at the present time it is thought wise to modify or do away altogether with this limitation, that is a legislative function and not such as the courts are warranted in usurping by judicial decision. Entertaining the views herein expressed, the judgment will be affirmed.

*Judgment affirmed, with costs.*