EDWIN R. DOWNES, REGISTER OF WILLS, *v.* SAFE
DEPOSIT & TRUST COMPANY.

[No. 61, April Term, 1932.]

*Decided June 22nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Willis R. Jones, Deputy Attorney General,* with whom was *William Preston Lane, Jr., Attorney General,* on the brief, for the appellant.

*Charles McH. Howard,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is the latest in a line of cases in which this court has been called upon to construe and interpret this language, occurring in Code, art. 81, sec. 24: "All estates * * * passing from any person who may die seized and possessed thereof, * * * intended to take effect in possession after the death of the grantor * * * shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate, * * *" and to determine upon varying facts whether interests

retained by the grantors and donors in the instruments under consideration in those several cases were of such a nature as to exclude the operation of that statute.

The facts of the present case out of which that question arises are not disputed, and may be thus stated: On February 10th, 1909, Miss Eliza L. Jenkins by her deed of that date transferred and assigned to her brother Michael Jenkins securities having an approximate value of $50,550, in trust to hold the same, collect the income therefrom, and dispose of it and the principal trust fund, as follows: To pay a designated portion of the net income to each of five named beneficiaries during their respective lives, the surplus to accumulate until the death of the longest liver of such annuitants, and then to distribute the original fund and accumulations to certain religious and charitable organizations (nevertheless reserving to the grantor an absolute power of revocation). As a result of accumulations, the value of that estate at the death of the last surviving annuitant August 4th, 1931, had increased to $78,777.81, and at the death of Miss Jenkins, on March 29th, 1916, it was valued at $52,-998.37. Miss Jenkins died without ever having exercised her power of revocation, although she did by two supplemental deeds provide out of the income for the payment of the funeral expenses of one annuitant to the extent of $150, and for the division among the survivors of the annuity payable to one of the five annuitants who died in 1910.

At her death Miss Jenkins left an estate valued at $239,-415.01, excluding the estate granted to Michael Jenkins, upon which all assessable taxes have been paid. Michael Jenkins, the trustee, died on September 7th, 1915, and the Safe Deposit & Trust Company succeeded him as trustee. In addition to the taxes which have been paid by her estate, the register of wills of Baltimore City on behalf of the State claimed inheritance tax upon the corpus of the trust estate and upon accumulated income prior to June 1st, 1927. The trustee denied and disputed that claim, whereupon the question was submitted by a case stated to the Superior Court

of Baltimore City and, the verdict and judgment being for the trustee, the plaintiff in that case has appealed.

Upon these facts, whether the estate is taxable depends solely upon the effect to be given a single fact, that the grantor retained or reserved a power of revocation. But for that power there could be no possible doubt that she had completely divested herself of any interest in the property granted, and that it passed upon the execution of the deed. The question in the case then is whether a mere naked power of revocation, contained in a deed under which property is granted as in this case to a trustee for certain uses beyond the control of the grantor, prevents the deed from operating as an immediate and complete transfer of the property.

In that precise form the question is new in this court, and the decisions elsewhere are conflicting, but the chancellor, after an exhaustive and very able review and analysis of the decisions in other states, and those of this court relating to the question, decided that upon the facts stated the estate is not subject to the collateral inheritance tax, and in that conclusion we are disposed to concur. By its express and literal terms the statute only applies to estates of which the grantor "may die seized and possessed," and which he has transferred by deed or other instrument intended to "take effect in possession after the death of the grantor," etc. The obvious purpose and intent of the statute was to strike at evasions of the collateral inheritance tax statute by imposing the tax upon all gifts or grants *inter vivos* by instruments of a *quasi* testamentary character, intended to take effect in possession at the death of the settlor but leaving to the settlor the beneficial enjoyment and/or control of the same during his life. It was not intended to impose the tax upon estates transferred *inter vivos* by deed or other instrument by which the grantor completely parted with all interest in or control over the estate, for the language employed is inconsistent with any such intention. Nor did the Legislature intend that the mere isolated power of revocation should be conclusive of either the fact that the grantor died seized and

possessed of the property, or of an intention that the grant should take effect in possession at his death. For, if it had intended that, it may be inferred that it would have added to the words, "intended to take effect in possession after the death of the grantor * * * donor," the words, "whether revocable or not." Since it used no such language, it may rationally be inferred that its purpose was that the circumstance of revocability should not be conclusive but a fact to be considered, in determining the effect of a given instrument transferring an estate *inter vivos*, and in ascertaining whether it was intended to take effect in possession after the death of the grantor. That is the construction which has been by the weight of authority elsewhere given to like words in similar statutes, and that construction seems to be compelled by previous decisions of this court dealing with this particular statute. The facts in none of those cases were precisely similar to those involved here, but in each of them the court had occasion to construe and interpret the phrases "died seized and possessed," and "intended to take effect in possession after the death of the grantor, * * *" which are controlling in this case.

In *Smith v. State*, 134 Md. 473, 107 A. 255, an estate was conveyed to a trustee in trust to hold and manage, and (1) to pay the net income to the grantor for his life, and (2) to distribute the corpus at his death to such persons as he might by his last will appoint, the grantor retaining the right of revocation. Upon those facts it was held that the grant was not intended to take effect until after the death of the grantor.

In *Lilly v. State*, 156 Md. 95, 143 A. 661, Lilly conveyed an estate to one Cummings, who reconveyed it to Lilly upon the following trusts, that is to say: (1) To hold and manage the same for the use of Lilly's wife during her life, and, if he survived her, to his own use; and (2) upon the death of the survivor the property to go to such persons as Lilly by his last will might appoint. Lilly was given full power to sell or mortgage the property, and the grant was subject to the right of Lilly and his wife to terminate it at any time.

It was held that Cummings was a mere conduit of title, and that the effect of the conveyance was to create potential interests which were not intended to take effect until after Lilly's death, and that his legatees took subject to the tax.

In *Downes v. Safe Dep. & Tr. Co.*, 157 Md. 87, 145 A. 350, 352, Mrs. Bridget Curran conveyed property to a trustee to manage the same and pay the net income to her during her life, and at her death to convey the corpus to her son and her daughter-in-law as tenants by the entireties, reserving to herself the right to withdraw from the trust estate not more than $5,000 in any one year, but reserving no other interest in the estate. Upon those facts it was held that the grantor was not "seized and possessed" of the property at the time of her death, and that for that reason the interest of the daughter-in-law was not taxable.

In *Darnall v. Connor*, 161 Md. 210, 155 A. 894, 898, Sallie C. Brown conveyed real and personal property to a trustee for the use of the grantor for her life, and at her death to such persons as she might by will appoint, or, failing such appointment, to her heirs. She bequeathed by her will the corpus of the estate to collaterals, and the State claimed that it was subject to the collateral inheritance tax, and this court so held.

These four cases have therefore established the principle that in grants of property *inter vivos,* where the grantor retains "the benefit of ownership during the life, and the right of disposition beyond" (*Darnall v. Connor, supra*), and, failing such disposition, the property goes to his or her heirs, the grantor is so far seised and possessed of the property that the grant over cannot take effect in possession until death, and is therefore taxable under the statute (Code, art. 81, sec. 124), but, in cases where by the terms of the grant the grantor, while retaining the benefits of ownership during life, has no control over the ultimate devolution of the property, the gift is immediate and complete, even though such grantor reserves what is equivalent to a power of revocation. *Downes v. Safe Dep. & Tr. Co., supra.*

In the *Downes* case, *supra,* in dealing with that provision of the deed which permitted the grantor to withdraw from the trust not exceeding $5,000 in any one year, it was said: "It is argued that such a provision is equivalent to a reserved power of revocation in the deed; but we do not so regard it. If she had demanded the payment as prescribed in the deed, and the trustee had complied with such demand, as it was bound to do, it would not have been revoking the terms of the deed, but would have been complying therewith, which compliance might have resulted in the depletion of the amount of the estate, even to extinction, but would have had no effect upon what was not withdrawn." And in *Darnall v. Connor, supra,* referring to the effect of a power of revocation upon such a grant, it was said: "In other jurisdictions the reservation of a right of revocation is viewed differently, but in none, so far as we have found, has the existence of such a reservation been viewed as the single determining incident. See cases reviewed in notes, 49 *A. L. R.* 867, 874, 876, 878, and 880, 67 *A. L. R.* 1248. On the contrary, so far as single incidents have been cited as decisive, reservations until death of the benficial ownership and the right to give title beyond death have been the features so regarded. * * * A power of revocation, so long as it continues unexercised, has no more effect than any other power has to diminish or limit the legal quantity or character of the trustee's holding. Other powers to be exercised before the expiration of the estate granted, and equally destructive of it, such as powers to sell, do not operate as limitations on the estates conveyed, and are without effect on the legal seisin and possession. *Guyer v. Maynard,* 6 G. & J. 420, 423; *Armstrong v. Kerns,* 61 Md. 364, 368. And, as is pointed out by the authorities on the subject, every such power is a power of revocation and new appointment. 1 *Tiffany, Real Property,* sec. 316; 4 *Kent, Commentaries,* 315; *Sugden, Powers* (8th Ed.), ch. 9, sec. 4."

Those cases announced no new law in this state, but were merely the logical application of principles stated in *De Bearn v. Winans,* 111 Md. 434, 74 A. 626, 632, in which it was

held that, where a grantor conveys property in trust for the use of designated beneficiaries during life and at their death to such persons as they may by will appoint, the whole estate passes completely and immediately from the grantor, and that the appointees take from the donor of the power and not under the will making the appointment, and that the provision of the Code that "the collateral inheritance tax is imposed only upon property passing to collateral relations from persons who may die seised thereof or transferred by will or by deed or other instrument intended to take effect in possession after the death of the grantor, bargainor, devisor, or donor," does not apply to such a case. That case followed *Fisher, trustee, v. State,* 106 Md. 101, 66 A. 661, in which it was held that, where a testator by his will gave property to trustees to be held for the use of his wife during her life and at her death for such persons as she might by her will appoint, and failing such appointment for a designated beneficiary, the estate taken by an appointee under the wife's will was subject to the tax on the value of the estate at the time of the wife's death. The *ratio decidendi* in that case is not clear, but apparently it is that the appointees under the wife's will took directly from her and not under the will of her husband, and that therefore the gift to them could not take effect until after her death, and to that extent there is some conflict between that case and the later case of *De Bearn v. Winans, supra.* But much of the apparent confusion arising from a comparison of those two cases is removed by the reasoning of the court in *Darnall v. Connor, supra,* and *Downes v. Safe Dep. & Tr. Co., supra,* and the statement, which in and by itself is entirely consistent with the majority opinion, of Judge Parke in the dissenting opinion: "Again, the key word of the construction is 'possession,' which is a slippery term. Its meaning is various, particularly when used in a statute with reference to every possible form of real, personal, and mixed property. *National Safe Deposit Co. v. Stead,* 232 U. S. 58, 67, 34 S. Ct. 209, 58 L. Ed. 504; *Greenwich Bank v. Hartford Ins. Co.,* 250 N. Y. 116, 125, 164 N. E. 876; *Leslie v. Rothes* (1894), 2 Ch. 499, 506. One of these mean-

ings is ownership apart from any question of immediate occupancy or use. And, in this sense, it is in harmony with the present language of the statute. *Webster's Dictionary; Century Dictionary.* It is of some significance that the original statute (Acts of 1884, ch. 237, sec. 1, lines 10 and 11) read: 'Made or intended to take effect in possession or enjoyment.' In 1860, the General Assembly re-enacted the statute and omitted the words 'or enjoyment,' and they have never been restored by any successive amendment. Code of 1860, p. 5, and Code of 1924, art. 81, sec. 124, and *supra.* * * * Therefore, if the proper construction of the words 'to take effect in possession' is not equivalent to become operative as a transfer of ownership, whether the subject-matter of the transfer be an estate in present possession or one in expectancy or future possession, there would be no collateral tax laid upon an estate *in futuro* of the decedent. The statute, however, is plain that no distinction was intended to be made in the imposition of the collateral inheritance tax on the ground whether or not an estate or interest was *in praesenti* or *in futuro,* and this is a convincing argument the words 'to take effect in possession' do not refer to estates or interests, but only to those documents of title which are designed to become operative as a transfer of interest or estate at the time of the death of the maker. Code, art. 81, secs. 124, 138, 139."

Beyond the state the cases are by no means harmonious in support of the rule as stated in this opinion and applied by the chancellor, but it appears to be supported by the decided weight of authority. In *Re Dolan,* 279 Pa. 582, 124 A. 176, 178, the Pennsylvania Supreme Court held that "the right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant. * * * How, then, could the extinguishment of the power to revoke the deed of trust by the death of Mrs. Dolan —that is all death accomplished—work a transfer of property? The right of revocation, standing alone, is not tanta-

mount to a property right in the settlor; it possesses none of the attributes of property." In a note to that case it is said (49 *A. L. R.* 867): "Nevertheless it may be laid down as a general rule that a mere reservation of a power to revoke a transfer during the grantor's lifetime does not of itself stamp a transfer with the characteristics of a transfer intended to take effect in possession or enjoyment at or after the death of the grantor"—and that statement is supported by the citation of a number of cases in which language of like tenor as that under consideration is construed and interpreted. There are decisions to the contrary, in the main those of lower courts, and it must be conceded that the reasoning in such cases is not without force. For the proposition that one can transfer property by perfect, complete, and final gift, and yet retain the power to instantly destroy the gift and retake the property at any time, involves a confusion of thought and a conflict of terms that are not easily explained or reconciled, except upon the theory underlying the recent decisions of this court and the decision in *Re Dolan, supra,* that a mere right of revocation is until exercised a dead inert thing which does not in any way affect the sufficiency of the instrument in which it is contained to effect an immediate and complete transfer of title.

The federal decisions cited by the appellant are not in point, for they turned, not upon the construction, but upon the constitutionality, of statutes having the same purpose as that under consideration in this case, and the decision in *Re Hoyt,* 86 Misc. 696, 149 N. Y. S. 91, cited to support a construction of the statute which would permit the tax in so far as it had that effect, was reversed by the Court of Appeals of New York in the later case of *In re Miller's Estate,* 236 N. Y. 290, 140 N. E. 701, 702, in which the court said: "The surrogate was of the opinion that the transfers by these trust deeds were made to take effect in possession and enjoyment at the death of the grantor, and, therefore, subject to the transfer tax as provided by section 220, art. 10, of the Tax Law (Cons. Laws, c. 60). With this conclusion the Appellate Division disagreed, holding that the mere reservation

of the power to revoke did not render the transfers taxable, citing *Matter of Carnegie,* 203 App. Div. 91, 196 N. Y. S. 502, since affirmed by this court 236 N. Y. 517, 142 N. E. 266. We think in this the Appellate Division was right, and we affirm this part of the order appealed from."

It follows, therefore, that upon the authority of *Darnall v. Connor, supra,* and *Downes v. Safe Dep. & Tr. Co., supra,* that the judgment must be confirmed.

*Judgment affirmed.*