430 P.2d 874

John C. HARVEY, as Executor of the Last Will and Testament of James C. Harvey, Deceased, and as Trustee and Beneficiary of the James C. Harvey Trust, Plaintiff-Appellant,

v.

F. A. VIGIL, Commissioner of the Bureau of Revenue of the State of New Mexico, and Vicente R. Ojinaga, Chief of the Succession Tax Division of said Bureau, Defendants-Appellees.

No. 8398.

Supreme Court of New Mexico.

Aug. 7, 1967.

Catron & Catron, Santa Fe, for appellant.

Boston E. Witt, Atty. Gen., Edward R. Pearson, Asst. Atty. Gen., Santa Fe, for appellees.

## OPINION

MOISE, Justice.

Plaintiff-appellant filed this action seeking a declaratory judgment to determine the taxability under § 31–16–20, N.M.S.A.1953, of property transferred by James C. Harvey, during his lifetime, to the James C. Harvey Trust.

There is no dispute about the facts. On February 22, 1963, the James C. Harvey Trust was created by agreement entered into by James C. Harvey, as grantor, and appellant, John C. Harvey, as Trustee. Pursuant to the .agreement, James C. Harvey transferred certain stocks, bonds and other property to the trustee to be held, managed, invested and distributed as provided in the agreement. Under the terms of the trust agreement, James C. Harvey reserved the net income of the trust during his lifetime, the power to revoke the agreement and the trust created thereby in whole or in 'part, and. the power to direct investment of the property. On March 9, 1964, James C. Harvey exercised his right to amend the agreement concerning provisions not involved here. Thereafter, on September 15, 1964, James C. Harvey died.

The issues presented to the trial court are set forth in its findings 6 and 7, as follows:

"6. That an actual good faith controversy has arisen and now exists between Plaintiff and Defendants with respect to the includability in decedent's estate for New Mexico Succession Tax purposes of the property transferred by decedent to said inter-vivos trust pursuant to said Trust Agreement. Defendants assert that the transfer of property to said inter-vivos trust constituted, in substance, a transfer to take effect upon the death of decedent within the meaning of Section 31–16–20, N.M.S.A., 1953 Compilation and is classified as a testamentary gift for purposes of taxation in Section 31–16–20, supra, and is therefore subject to succession tax. Plaintiff takes the position that the transfer of property to said trust was not a transfer to take effect on death within the meaning of Section 31–16–20, supra, and that said property is not subject to succession tax under Section 31–16–20, supra, or under any other New Mexico law. Alternatively, Plaintiff takes the position that Section 31–16–20, supra, is void and unenforceable for the reason that the subject matter thereof is not clearly expressed in the title of Chapter 179 N.M. Laws 1921 by which said section was enacted. Defendants assert that the subject matter of Section 31–16–20, supra, is clearly expressed in the title of Chapter 179, N.M.Laws 1921."

"7. That there is a further controversy between the parties in that Section 31–16–20, supra, provides for the payment by the grantee or donee of property subject to Section 31–16–20, supra, of a tax of 3% or one and one-half percent of the value of such property, depending on the relationship of the grantee or donee to the grantor or donor. Plaintiff takes the position that he is not subject

to the payment of said tax for the reason that the transfer of assets to said trust was not a transfer to take effect on death within the meaning of Section 31–16–20, supra. Alternatively, Plaintiff contends that Section 31–16–20, supra, is void and unenforceable because the subject matter thereof is not clearly expressed in the title of Chapter 179, N.M.Laws 1921 by which said section was enacted, and because the application of said tax to Plaintiff would result in a taking of property without due process of law and a denial of the equal protection of the laws in violation of Article II, Section 18 of the New Mexico Constitution and of Amendment XIV, Section 1 of the Constitution of the United States.

"Defendants assert that Plaintiff is subject to the tax imposed by Section 31–16–20, supra, for the reason that the transfer of property to the Trust was, in substance, a transfer intended to take effect upon the death of decedent within the meaning of Section 31–16–20, supra; that the subject matter of Section 31–16–20, supra, is clearly expressed in the title of Chapter 179, N.M.Laws 1921; and that the application of said tax to Plaintiff does not result in a taking of property without due process of law or deny equal protection of the laws in violation of Article II, Section 18 of the Constitution of New Mexico and of Amendment XIV, Section 1 of the Constitution of the United States."

The court determined the issues in favor of appellee, holding (1) that the property transferred to the trust pursuant to the agreement was, in substance, a transfer to take effect upon death of the grantor, and accordingly was a testamentary gift taxable under § 31–16–20, N.M.S.A.1953; (2) that there was no violation of Art. IV, § 16, N. M.Const., in that the subject matter of § 31–16–20, N.M.S.A.1953, was not improperly included in the title of ch. 179, N. M.S.L.1921, of which it was a part; and (3) that the provision did not constitute a taking of property without due process of

law or a denial of the equal protection of the laws in violation of Amend. XIV, § 1, of the United States Constitution, and Art. II, § 18, of the New Mexico Constitution. From the judgment carrying into effect these determinations the appellant timely perfected this appeal, and here presents for review under three points the issues ruled on by the court below.

Resolution of Point I requires that we determine if the trust constituted a transfer "to take effect upon the death of the grantor" so as to make the property placed therein taxable under § 31–16–20, N.M.S.A. 1953. That section reads:

"All gifts of real or personal property, by deed, grant or other conveyance made in contemplation of death, except in case of a bona fide sale for full consideration in money or moneys worth, shall be testamentary gifts within the meaning of this act for taxation purposes, and all such property so conveyed shall be subject to the tax imposed herein, and shall be reported and inventoried by the executor, administrator, grantee, donee or beneficiary. Property shall be prima facie deemed to have been transferred by grant or gift in contemplation of death under this act, when such grant or gift shall have been executed within one [1] year prior to the death of the grantor or donor. *All transfers and alienations by deed, grant, or other conveyance, of real or personal property to take effect upon the death of the grantor or donor, shall be testamentary gifts within the taxation purposes of section 2 [31–16–2]* and all property so conveyed shall be conveyed subject to the tax imposed by said section and upon the same principles and percentages regarding the degree of relationship; and the grantee or donee of any such estate, shall, upon the receipt thereof, pay to the state treasurer a tax of three per cent [3%] or one and one-half [1½%] of the value of such property, according to his aforesaid degree of relationship to the grantor or donor, and the executor or administrator, of

any such grantor or donor shall at once communicate to the state tax commission [Bureau of Revenue] his knowledge of any and all such conveyances. No executor, administrator, or bailee having possession of any deed, grant, conveyance, or other evidence of such transfer or alienation shall deliver the same or anything connected with the subject of such transfer or alienation until the tax aforesaid has been paid to the treasurer of the state." (Emphasis supplied.)

There is no suggestion or contention that the transfer was made "in contemplation of death." The only issue under this point is whether the transfer was "to take effect upon the death of the grantor" and accordingly subject to the estate tax provided in § 31–16–2, N.M.S.A.1953, together with the additional tax assessed against the grantee or donee in § 31–16–20, supra.

So far as we have been able to discover, our statute is unique in that it places the tax on transfers and alienations "to take effect upon the death of the grantor or donor," whereas in all other states, with the possible exception of Maryland, hereinafter noted, there is incorporated between the words "effect" and "upon" the four additional words "in possession or enjoyment." If these words were present in our statute we would have an easy task in concluding that the trial court ruled correctly, and the transfers here in issue were taxable. It cannot be doubted that the devolution of property to the possession and enjoyment of the beneficiaries of a trust upon the death of the trustor makes the property subject to tax where the statute provides for taxing of gifts "to take effect in possession and enjoyment" upon death. Rising's Estate v. State, 186 Minn. 56, 242 N.W. 459 (1932); In re Bostwick's Estate, 160 N.Y. 489, 55 N.E. 208 (1899); In re William B. Dana Co., 215 N.Y. 461, 109 N.E. 557 (1915); In re Schmidlapp's Estate, 236 N.Y. 278, 140 N.E. 697 (1923); Blodgett v. Guaranty Trust Co., 114 Conn. 207, 158 A. 245, aff'd., 287 U.S. 509, 53 S. Ct. 244, 77 L.Ed. 463; Pape v. Sullivan,

151 Conn. 39, 193 A.2d 480 (1963); In re Madison's Estate, 26 Cal.2d 453, 159 P.2d 630 (1945); In re Lines Estate, 155 Pa. 378, 26 A. 728 (1893). See cases cited in Annots., 167 A.L.R. 438 (1947); 155 A.L.R. 850 (1945); 121 A.L.R. 359 (1939); 100 A.L.R. 1244 (1936); 67 A.L.R. 1247 (1930); 49 A.L.R. 864 (1927).

Because our statute differs from all other statutes in not providing for the tax liability to attach upon the donee or grantee coming into possession or enjoyment, but taxes only transfers "to take effect" at death, we have a different problem. We are constrained to consider the issue as one to determine the meaning of "to take effect" as used in the statute. Does it mean something different than "to take effect in possession and enjoyment"? The authorities appear to be uniform in holding that a transfer inter vivos, complete when made, is not a testamentary disposition. National Shawmut Bank of Boston v. Joy, 315 Mass. 457, 53 N.E.2d 113 (1944); Downes v. Safe Deposit & Trust Co. of Baltimore, 163 Md. 30, 161 A. 400 (1932); Re Estate of Dolan, 279 Pa. 582, 124 A. 176, 49 A.L.R. 858 (1924). If the legislature intended by use of the term "testamentary gifts" to exclude all inter vivos gifts from the taxes on succession imposed by the act when it described "transfers to take effect upon the death of the grantor" as "testamentary gifts within the taxation purposes" of § 31–16–2, N.M.S.A. 1953, appellant's position here would be most difficult to overcome. However, we are unconvinced, and will undertake to explain our reasons for concluding that such was not the legislative intent.

This court, almost forty years ago, in State v. Eldodt, 33 N.M. 347, 267 P. 55 (1928), noted that those portions of § 31–16–20, supra, material to this decision, were originally adopted as ch. 179, § 17, N.M.S. L.1921, which in turn was a reenactment of ch. 122, § 17, N.M.S.L.1919. It was there observed that the section was derived from § 2376 of the 1902 Revised Laws of Connecticut, which was repealed in 1905 with-

out having been construed by the courts of that state. Although not important in our present discussion, we would observe that § 2376 was passed in 1897 and was not repealed in 1905, but was amended by ch. 218 of Conn.Pub.Acts 1909, and again by ch. 231, § 12, Conn.Pub.Acts 1913. In the 1897 act and in each of these revisions, transfers "to take effect upon the death of the grantor or donor" are made testamentary gifts and subject to tax. By ch. 332, § 12, Conn.Pub.Acts 1915, the statute was again amended so that the tax was placed on gifts "to take effect *in possession or enjoyment* upon the death of the grantor or donor." This had been the form of the statute from 1889 to 1897. Accordingly, it appears that from 1897 until 1915 the tax was upon gifts to take effect upon the death of the grantor, and in the latter year the law was changed so that it would apply to gifts taking effect "in possession or enjoyment," as had been true from 1889 to 1897.

The Connecticut Supreme Court of Errors had occasion to comment on the significance of the statutory changes in Blodgett v. Union & New Haven Trust Co., 97 Conn. 405, 116 A. 908 (1922), and also to interpret the statute as it read in 1913. The case involved an irrevocable gift in trust with the income reserved to the settlor for her life, and the entire property to go to settlor's daughter if she was living when the settlor died. We quote the following from the opinion in that case:

"* * * The phrase 'gift to take effect at death,' in its context, evidently means a gift in future to take effect at death of an interest in property possessed by the decedent at the time of his death. The gift in question was a gift in praesenti of the remainder interest in property of which the decedent reserved no more than a life interest, which was extinguished by her death. It was a gift inter vivos, and it cannot be brought within the statute of 1913 unless we read into the act the qualifying and enlarging phrase afterwards inserted by the amendment of 1915, 'in possession or enjoyment.'

"These words mark the difference between a tax on the privilege of succeeding to the property of a decedent and a tax on the privilege of succeeding to the possession and enjoyment of property which the decedent has conveyed away during his lifetime, reserving only a right to the income during his own life. Nobody doubts the right of the state to tax the privilege of succeeding to the possession and enjoyment of property under what the Supreme Court has called 'artificial and technical estates with limitations over' (Keeney v. N. Y. [222 U.S. 525, 32 S.Ct. 105, 56 L.Ed. 299] supra); but, on the other hand, nobody can doubt that the General Assembly and its financial advisers understood very well the difference between a gift to take effect at death and a conveyance inter vivos reserving a bare life interest. This is all the more certain because our first collateral inheritance tax act of 1889 (Acts 1889, c. 180) recognized the difference by imposing a tax on gifts 'intended to take effect in possession or enjoyment after the death of the grantor.' In 1897 (Acts 1897, c. 201, § 11) the four words 'in possession or enjoyment' were dropped out of the statute, and the tax limited to gifts 'to take effect upon the death of the grantor or donor'; and it was not until 1915 that the scope of the act was again enlarged by reinserting the words 'In possession or enjoyment.' Since the taxing power of the General Assembly, within its constitutional limitations, is plenary, we must assume that these variations in phraseology were intentional and adapted to the changing financial necessities of the state."

As already pointed out, the trust involved in Blodgett was irrevocable. Does this fact make the trust there considered sufficiently distinguishable as to require a different conclusion under the factual situation here present?

It is generally recognized that a trust does not lose its character as an inter vivos gift by virtue of a provision whereby the grantor retains a right to revoke it during his lifetime. Under such a trust, upon the death of the trustor with the trust unrevoked, any interests which then attach ordinarily are considered not to be testamentary. See Downes v. Safe Deposit & Trust Co. of Baltimore, supra, at 161 A. 400, 402, wherein the rule is stated in the following language:

" * * * [I]n grants of property inter vivos where the grantor retains 'the benefit of ownership during life and the right of disposition beyond,' Darnall v. Connor, supra, and failing such disposition the property goes to his or her heirs, the grantor is so far seised and possessed of the property that the grant over cannot take effect in possession until death, and is therefore taxable under the statute, Code, art. 81, § 124, but, in cases where by the terms of the grant the grantor while retaining the benefits of ownership during life has no control over the ultimate devolution of the property, the gift is immediate and complete, even though such grantor reserves what is equivalent to a power of revocation, Downes v. Safe Deposit & Trust Company, supra.

* * * "

See also, Annots., 167 A.L.R. 438, 441; 155 A.L.R. 850, 853; 121 A.L.R. 359, 360; 100 A.L.R. 1244, 1245; 67 A.L.R. 1247, 1248; 49 A.L.R. 864, 867; Re Estate of Dolan, supra.

The opinion in Downes v. Safe Deposit & Trust Co. of Baltimore, supra, is of additional interest because of the form and history of the statute there being considered. It is there disclosed that a statute adopted in 1844 placed the tax on transfers "[m]ade or intended to take effect in possession or enjoyment" upon death. However, in 1860 the statute was reenacted with the words "or enjoyment" omitted so that thereafter the tax attached to the property passing by instrument "intended to take effect in possession" after the grantor's death. Concerning the language of the statute the court had the following to say:

" ' * * * It is of some significance that the original statute (Acts of 1844, c. 237, § 1, lines 10 and 11) read: "Made or intended to take effect in possession or enjoyment." In 1860, the General Assembly re-enacted the statute and omitted the words "or enjoyment," and they have never been restored by any successive amendment. Code of 1860, p. 5, and [Code of 1924] art. 81, § 124, and supra. * * * Therefore, if the proper construction of the words "to take effect in possession" is not equivalent to become operative as a transfer of ownership, whether the subject-matter of the transfer be an estate in present possession or one in expectancy or future possession, there would be no collateral tax laid upon an estate in futuro of the decedent. The statute, however, is plain that no distinction was intended to be made in the imposition of the collateral inheritance tax on the ground whether or not an estate or interest was in praesenti or in futuro, and this is a convincing argument the words "to take effect in possession" do not refer to estates or interests, but only to those documents of title which are designed to become operative as a transfer of interest of estate at the time of the death of the maker. Code, art. 81, §§ 124, 138, 139.' "

From all the foregoing it becomes clear, as already noted, that our statute is unique, but is generally the same as the Connecticut statute in force from 1889 to 1915. It had been interpreted by the Connecticut Supreme Court of Errors in 1922, after we adopted it in 1919. Although the construction placed on the statute by the highest court of Connecticut subsequent to our adoption of it is highly persuasive, we did not adopt such construction. Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942 (1938). We have carefully weighed the decision in Blodgett v. Union & New Haven Trust Co., supra. We cannot convince ourselves that the conclusion there reached was in any

sense intended when § 31–16–20, supra, was adopted. To our minds, it is exceedingly clear what the legislature was attempting. It was trying to close a gap in our tax laws made possible through inter vivos gifts the benefits of which did not actually vest in the beneficiaries until the death of the grantor. This purpose is made clear in those statutes which say the tax attaches when the property vests "in possession and enjoyment" on death. These words merely make more explicit the intention that transfers in trust with all the elements of ownership except bare legal title being retained does not serve to avoid a tax otherwise applicable when the beneficiary comes into possession and enjoyment. The court, in In re Lines' Estate, supra, although considering a statute containing the words "in possession and enjoyment," aptly describes a situation similar to our own:

"In view of the undisputed facts, it is strange that any question should have been seriously raised either as to the right of the commonwealth to the tax on the securities or the liability of the beneficiaries to pay their respective proportions thereof. Mr. Lines was not only the beneficial owner of the securities prior to and at the time of his decease, but, under the reserved power of modification, revocation, etc., he had absolute control of the disposition to be made of the securities upon his decease. At any time prior thereto, he could have modified or revoked the trust in favor of the beneficiaries named in the deed. It is true the legal title to the securities was in the trust company; but aside from mere compensation for its services, as custodian of the property, the company had no beneficial interest therein. In any proper sense of the term, the securities were the 'personal property' of Mr. Lines. They were his to enjoy during his lifetime, and his to dispose of, in any manner he saw fit, at any time prior to his decease. He chose to leave the trust in favor of the beneficiaries unaltered and unrevoked; and, as he in-

tended, it took effect, in enjoyment, immediately after his decease. * * *"

We are not able to apply the fine distinction asserted by appellant. While unable to understand our legislature's failure to remove any question by adding the words "in possession and enjoyment" as the legislatures of virtually all other states have done, we nevertheless do not feel justified in reading the language of the statute in the narrow, legalistic manner advanced by appellant. Believing as we do, that the only reasonable interpretation to which the language of the statute lends itself is the same as if it had included within it the words "in possession and enjoyment," we so construe it, and hold that upon the death of James C. Harvey the property then in the appellant's hands as trustee was taxable as a testamentary gift as provided in § 31–16–20, supra.

Appellant, in his second point, would avoid the effect of what has been said above by virtue of claimed defects in the title of the act of which § 31–16–20, supra, was a part. The title to the act (ch. 179, N.M.S.L.1921) reads:

"An Act Providing for a Succession Tax, Fixing the Rate Thereof, Providing the Method for the Appraisals of Decedents Estates, for the Collection of Such Tax and Repealing Chapter 122 of the Session Laws of 1919, Being an Act Relating to the Same Subject Matter and Section 2246 New Mexico Statutes, Annotated, Codification 1915, Relating to Inventories of Executors and Administrators, and to Repeal All Inconsistent Legislation."

It is appellant's position that this title, insofar as Sec. 17 (now § 31–16–20) is concerned, offends against the provisions of Art. IV, Sec. 16, N.M.Const., which provides, "The subject of every bill shall be clearly expressed in its title * * *."

Appellant argues, as we understand it, that the tax provided for is a "succession tax" which would include taxes on transfers of a testamentary character to take effect at death, but not inter vivos transfers

such as this, even though possession and enjoyment were postponed until death. In view of our disposition of Point I wherein we held the legislative intent was to make the vesting of the benefits or the succession the event giving rise to the tax, and not the transfer of title, we see no merit in the argument. The tax is one upon succession. See Rising's Estate v. State, supra.

 Appellant's third point asserts a denial of due process and equal protection of the laws because of the provision in § 31–16–20, supra, for an additional or second tax of 1½% or 3% over and above the regular 1% succession tax. This argument was considered by this court in State v. Eldodt, supra, and we held it to be without merit. We are not impressed that we should now reverse or overrule that case.

Finding no error, the judgment is affirmed.

It is so ordered.

COMPTON and CARMODY, JJ., concur.