RICHARD M. DUVALL, Administrator c. t. a., *vs.*
HAMBLETON & CO. et al.

*Competency of Witness—Hearsay Evidence—Parol Agreement to Create
Lien on Shares of Stock—Insufficient Proof of Alleged Agreement.*

In a suit by an administrator against a son of the decedent and third par-
ties to enforce an agreement by the son to pledge certain shares of stock
for money loaned to him by the decedent, the son is a competent wit-
ness upon the call of the plaintiff under Code, Art. 23, sec. 277.

The testimony of an administrator that his decedent told him that she
intended to make a loan of money and receive shares of stock as secur-
ity therefor is inadmissible, because within the rule excluding hearsay
evidence.

A parol agreement to create a lien on shares of stock for money loaned
will not be enforced in equity unless the existence and terms of the
agreement be clearly and explicitly established.

An administrator *c. t. a.* filed the bill in this case alleging that his deced-
ent loaned a sum of money to her son with which to purchase shares
of stock in a corporation upon his agreement to transfer the certificate
for the shares to her as collateral security for the loan; that the certifi-
cate was made out in her son's name and that he assigned and delivered
the same to his mother, but the shares were not transferred on the
books of the company; that after her death the certificate could not be
found and that a judgment creditor of the son had levied an attach-
ment upon the shares. The bill charged that the testatrix was entitled
to a lien on the stock for the amount of the loan and asked that the
corporation be required to issue a new certificate to be assigned by the
son to the plaintiff and that the shares be sold and the proceeds applied
to the satisfaction of the lien. The evidence in support of these allega-
tions was chiefly that of the decedent's son, the borrower of the money,
who testified that the certificate remained in the stock book of the cor-
poration for a year after he had paid for the same; that the understand-
ing was, when the loan was made, that he should turn the stock over as
collateral, and that his recollection was that he did finally endorse the
certificate to his mother, but he declined to testify positively that he did
so. *Held*, that this evidence does not clearly and satisfactorily estab-
lish the making of a contract to assign and pledge the stock to the tes-
tatrix, or show that the certificate ever was in her possession, and that
consequently the plaintiff has failed to prove his right to a lien on the
stock.

Appeal from the Circuit Court of Baltimore City (Sharp, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Robert Biggs* (with whom was *Richard M. Duvall* on the brief), for the appellant.

*W. Cabell Bruce* and *John Wm. Marshall* (with whom were *D. K. Este Fisher* and *Robert M. McLane* on the brief) for the appellees.

JONES, J., delivered the opinion of the Court.

The appellant in this case is the administrator *c. t. a.* of Fannie M. Baldwin, deceased, and as such filed in the Circuit Court of Baltimore City his bill of complaint in which it was alleged that upon the organization of the William H. Crawford Company, a corporation formed under the general incorporation laws of the State, "George S. Baldwin being about to subscribe for fifty shares of the capital stock of the said company and not having the money necessary" to pay for the same applied to the said Fannie M. Baldwin, who was his mother, to loan him five thousand dollars to enable him to make payment for such stock, and agreed with his said mother that she should loan the said sum and that he would assign to her the fifty shares of stock "as collateral security for the repayment of said loan with interest;" that accordingly Fannie M. Baldwin, relying upon the agreement so made and upon the stock as security, on the 19th of March, 1898, loaned to the said George S. Baldwin the sum of five thousand dollars which was at once paid over to the William H. Crawford Company for fifty shares of its capital stock; that thereupon the corporation issued one certificate for forty-nine shares of its capital stock in the name of George S. Baldwin and one certificate for one share to one Wilson to qualify him, as a stockholder, to be a director in said corporation to represent the interests of said Baldwin; that thereafter in pursuance of said agreement with his mother George S. Baldwin assigned and delivered to her the certificate for the forty-nine shares of stock ssued to him; but the same was not transferred to her on the

books of the company, "being held only as collateral security
for the repayment of the loan" made to him; that since the
death of Fannie M. Baldwin diligent search for this certificate
of stock has failed to discover the same; that on the 10th day
of October, 1901, the appellees, who compose the firm of
Hambleton & Company, recovered a judgment against George
S. Baldwin and on the 12th of the same month "issued an
attachment thereon and levied upon all the right, title and in-
terest" of Baldwin, the defendant in the judgment, in the
shares of stock which have been mentioned and which stood
on the books of the corporation in his name "and are pro-
ceeding to sell the same; that the appellant has notified the
corporation of the loss of the certificate of stock issued to
him and has applied to have a new certificate issued in the
place of the one lost but that the company has refused to
issue a new certificate assigning as a reason that the "stock
is claimed by other parties, and the title is in litigation."

The bill then charges that under the agreement therein
alleged and set out between George S. Baldwin and his mother
the certificate of stock issued to the former is charged with
"a special lien" in favor of the latter to the extent of five
thousand dollars with interest, which is good against George
S. Baldwin and his creditors; and prays for a decree requiring
the corporation to issue a new certificate of stock in the name
of George S. Baldwin and that Baldwin shall assign the same
to the appellant and that the stock may be sold and the pro-
ceeds of sale be applied to the payment of appellant's claim—
any surplus to be distributed under the further order of the
Court.

The Willam H. Crawford Company, the appellees who com-
pose the firm of Hambleton & Company and George S. Bald-
win were made defendants to the bill and made answer thereto.
The answer of George S. Baldwin admitted all the allegations
of the bill.   The corporation submitted itself to the orders of
the Court offering to do as the Court should direct.   The
answer of Hambleton & Co. admitted that judgment was ob-
tained by them against George S. Baldwin and proceedings

had thereon as alleged in the bill of complaint; and averred that not only had they proceeded to sell the stock in question, as alleged, but had actually sold the same and had become the purchasers thereof; and insisted that they were protected in their title to the stock thus acquired by the provisions of our statutory law (Art. 23, sec. 277 of the Code). They denied that the stock in question had ever been assigned to Fannie M. Baldwin as alleged; and insisted that the matters of controversy now brought forward by appellant's bill were *res adjudicata* by reason of facts set out in the answer.

Upon the issues made by the pleadings and the evidence submitted thereunder the inquiry upon which all others depend is, has the appellant established by satisfactory proof the allegations of his bill upon which he bases the claim to an equitable lien on the stock which is the subject of controversy in the case. As preliminary to this inquiry certain exceptions to testimony, offered by the appellant and pertinent thereto, will be disposed of. George S. Baldwin, a defendant, as has been seen, in the case in the Court below, was called as a witness by the appellant, the plaintiff below, and his competency to testify is made the subject of exception by the appellees upon the ground that he is not, under the circumstances of this case, an "opposite party" to the plaintiff within the intent and meaning of our Evidence Act as amended and enacted by Act of 1902, chap. 495. It is insisted that his adverse position as a defendant on the docket does not make him competent as a witness at the call of the plaintiff because of accord between him and the plaintiff as to the object to be accomplished by the suit. The exception to the competency of this witness, however, cannot be sustained. That he is, as a witness, not hostile to the plaintiff (appellant) and may be supposed under the circumstances of the case, to have a bias in favor of the appellant, who called him, as respects the result of the suit, may be properly suggested as reason why the Court should be cautious in weighing his evidence and in the effect to be given to it; but his competency to testify is to be determined by his legal relation to the cause. Under the

statute he was competent as a witness upon the call of the "opposite party," and his position in the case brings him within this provision of the statute. As respects the object of the suit appearing from the allegations of the bill of complaint of the appellant and its prayer for relief the defendant, Baldwin, had no such identity of interest with the appellant that he could have been properly joined as a plaintiff in the proceeding. On the contrary his position is shown to be adversary, in legal contemplation, and he was a necessary party defendant. Relief was sought by the bill as against him, and to establish such right of relief as against him was the very foundation for the relief sought by the suit as against the other parties thereto. In the circumstances of the case the Court would not have made a decree for the relief prayed in the bill of the appellant in the absence of George S. Baldwin as a defendant. As to the defendant corporation no decree could have been safely or justly passed against it to issue a new certificate of stock as asked by the bill unless by such decree the title to the stock was settled as against Baldwin as well as in favor of the appellant. If the appellant was to have a decree according to the relief asked it was manifestly proper that Baldwin should be included by the decree as to his title to the stock which was the subject of the suit. Baldwin being a proper and necessary party defendant in the cause was, as to the appellant, an "opposite party" within the meaning and purview of the statute to which reference has been made. As respects the question now being considered this case would seem to fall clearly within the ruling made in the case of *Whitridge* v. *Whitridge et al.*, 76 Md. 54 (see pages 75–76), as to the competency of Mrs. Whitridge as a witness in that case.

A further exception to testimony proper to be here considered is that presented by the appellees to the testimony of the appellant who offered himself as a witness to testify in his own behalf. There is an exception directed specifically to his testimony as to statements made by Fannie M. Baldwin, deceased, which is the only one it is necessary here to notice.

Testimony as to such statements was clearly inadmissible. That part of appellant's testimony as to statements made by the deceased more immediately affecting the inquiry we are now making is as follows: "Mrs. Baldwin informed me that she expected to loan George $5,000, and that he was to assign to her the stock." This comes within the description of hearsay evidence. It was the declaration of the deceased in her own favor and offered now in her own interest. If Mrs. Baldwin were alive and a party to the suit she would have been competent to testify to the transaction about which she was speaking—that is to what was said and what was done between the parties thereto to show what the transaction really was, and could have called witnesses to do the same; but surely it would not have been competent for her to call the appellant or any other witness to show that she had expressed an intention to make a contract as evidence tending to fasten an obligation upon other parties. No peculiar circumstances have been shown to take this offer of testimony out of the ordinary rule. It is not perceived how the fact of Mrs. Baldwin being dead and of the suit here being brought by her administrator can have that effect.

It is further objected that the appellant was not competent to testify at all in the case, but this broad question it is not necessary here to pass upon. Assuming without deciding that he was competent as a witness to give testimony not in itself obnoxious to other legal objection some of his testimony will be noticed further on. Whether the allegations of appellant's bill relied upon to support his claim to a lien on the stock here in question have been established or not by the evidence offered by him will depend upon the effect to be given to the evidence of the two witnesses who have been named. This is so obviously the case from an examination of the proofs that it may be stated without undertaking to discuss the whole evidence in treating this question. Now what is the proof to sustain these allegations? And it is well at the outset to note the standard to which it must conform. As to the setting up of liens of the character of the one claimed

in this case our predecessors in the case of *Alexander* v. *Ghise-lin*, 5 Gill, 138–182, speaking through JUDGE CHAMBERS as to the agreements which will give rise to them, after saying they would be enforced in equity upon parol contracts, added "if the contract be as well established, it imposes the same moral and equitable obligation to perform it, when made verbally, as if made in writing, and the legal effect of the terms of the agreement will be the same in the one case as in the other. The greater difficulty of proving the precise terms and import of the agreement is necessarily incurred by the party setting it up, and Courts of equity have properly required that every agreement shall be clearly and explicitly established, before they will lend their aid to enforce it."

The agreement alleged in this case was not in writing. If there was an agreement, and whatever it was, it was entirely verbal. There is nothing to throw any light upon it or to show what it was except the parol testimony of the witnesses offered to establish it. It is in proof that George S. Baldwin borrowed five thousand dollars from his mother, Fannie M. Baldwin, that he bought with this money fifty shares of stock of the defendant corporation and that forty-nine of these shares were issued in his name. The proof as to his making an agreement for a pledge of the stock with his mother is as follows: George S. Baldwin in his testimony in answer to a question: "State fully what was the transaction between you and your mother in reference to this loan?" answered "the understanding was that I was to turn this stock over as collateral for the money loaned." Asked "when was this arrangement made?" he answered "when the money was borrowed." Asked "with whom did you have the understanding?" he answered "with my mother and Mr. Richard M. Duvall. I am not positive about Mr. Duvall." He further testified that Mr. Duvall was the legal adviser of himself and his mother. Asked what he did with the certificate of stock? he said he "left it in the stock book of the company in the safe until the time of expulsion from the company and then took it home." Then adds "such is my recollection." This

he said was about a year after the incorporation. Asked then if he had allowed the certificate to remain one year in the stock book "after its execution" he answered "that is my remembrance." Asked why he had not turned the certificate over to his mother promptly he said "careless procrastination is about all I know." Asked if his mother had spoken to him in reference to this stock? he said "she asked me to attend to the matter" and that he said he would and "let the thing run on." He was then asked to "state fully what you (he) finally did with the certificate?" to which he answered "my recollection is (I don't swear this) that I took it home and endorsed it over to my mother." He then said in answer to a question he did not know where the certificate is now.

It is manifest that this testimony fails to prove the appellant's case as he states it in his bill. It is there alleged that "in compliance with the terms" of the agreement he sets up "George S. Baldwin assigned and delivered" to his mother the "certificate for forty-nine shares of the capital stock" of the defendant company. Baldwin in his testimony expressly declines to swear that he did so assign and deliver it. There was no other witnesses who testified upon this point; and there is no evidence in the record which can be taken to show that the certificate of stock was ever in the possession of Fannie M. Baldwin by assignment or otherwise. But is this testimony satisfactory even as to an agreement to assign and pledge the stock? and does it in the language of this Court, which has been quoted, "clearly and explicitly" establish such an agreement? It is to be noted that it came from a witness who ought to have been entirely conversant with the transaction of which he was asked to speak in all of its details and that he was a witness of evident intelligence. Without meaning to attack his veracity it is not possible in reading his testimony not to observe the uncertainty of his recollection of very important facts; nor that the testimony was elicited by questions at least somewhat suggestive; nor that to the questions he made rather vague and general answers as to matters with which he ought to have been familiar in every detail.

When asked the important question as to what was the trans-
action between him and his mother in reference to the loan
she made him he answered generally "the understanding was
that I was to turn over this stock as collateral," &c.  Though
he was asked to "state fully" the transaction he simply char-
acterized it and stated what he imputed to it as its effect.
How did this understanding arise ?   What was there to indi-
cate it as having a binding effect on the parties and as estab-
lishing rights between them?   It was for the Court to know
this and to determine the effect of the transaction accordingly.
What was the understanding between the parties—that is the
agreement—under which they acquire legal rights, results
from what was said and done between them in reference to
the subject of the agreement and that is what the testimony
ought to show.

It is to be further observed that the conduct of this witness,
after the understanding, as he describes it, was had, was en-
tirely inconsistent therewith.   It may be freely admitted that
what appears in the testimony of George S. Baldwin would
be sufficient as against him to estop him from denying that
there was such an agreement between him and his mother as
the appellant charges; but if we suppose him here as a de-
fendant denying the alleged agreement and making it neces-
sary for the appellant to "clearly and explicitly" establish it
against him, could the evidence which has been reviewed, if
delivered by an opposing witness, be accepted, under the cir-
cumstances of the case as a satisfactory basis of a decree
against him.   As it is he is here as a witness adverse to parties
to the cause having interests to be affected by the decree and
they are entitled as against them to the clear, explicit and
strict proof which the law properly requires to establish these
secret and undisclosed liens.   His admissions and the estoppel
which these may work as against him do not affect the case
as against other parties to the cause whose rights are to be
passed upon, and who are here denying the existence of the
agreement sought to be enforced.

Now assuming without deciding, as has already been said

that it comes from a competent witness, evidence given by
Mr. Duvall will be referred to.   This witness (the appellant)
after giving evidence not pertinent to the present inquiry and
saying that he had aided in looking after the details of the
organization of the defendant corporation testified that "the
certificates of stock were to be drawn according to the sub-
scriptions and Mr. Baldwin was to deliver the certificate that
he got (I think) of $4,900 to his mother."   He further said
he had nothing further to do with the matter until at the end
of the first year; that in the meantime he met George S.
Baldwin several times "and asked him about the transfer of
the stock."   He could not remember what Baldwin said but
he was "satisfied on one of these occasions that the matter
had been attended to."   This evidence as to an agreement
with reference to the stock in question is of the same vague
and unsatisfactory character as that which has already been
commented upon.   It is a mere assertion of what was to be
done without reference to any fact upon which it is based.   It
may for all that appears be what Mr. Duvall heard from one
of the parties alone or if based upon what he heard from both
it is what he considered the effect thereof.   It may again be
said what the Court is entitled to is to be made acquainted
with the facts from which its own conclusion as to the effect
of the facts may be drawn.   Certain it is that it does not ap-
pear from this testimony that George S. Baldwin was at the
time much impressed with the fact of being under an obliga-
tion to turn the stock over.

Reference has been made by the appellant in his brief to
the case of *Schwind* v. *Boyce,* 94 Md. 510, as having been
decided upon a condition of proof similar to that in the case
at bar.   In the case referred to the details of the transaction
there involved were made to appear in evidence and were
present to be passed upon by the Court as to their proper
legal effect; and the Court found that the testimony was "in
harmony with all the facts connected with the transactions of
the parties."

As we do not think the condition of the proof in the case

is such as to afford a satisfactory basis for a decree to enforce the equitable lien which the appellant sets up against the stock here the subject of suit the other questions which would otherwise properly arise upon the pleadings may be treated as not in the case.

It follows from the foregoing views that the decree of the Court below must be affirmed.

> *Decree affirmed with costs to the ap-*
> *pellees.*

(Decided July 2nd, 1903.)