## CHARLES H. WALKLING *v.* HENRY F. WALKLING

ET AL.

[No. 32, January Term, 1932.]

*Decided March 4th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, SLOAN, JJ.

*Simon Silverberg,* with whom was *Grace R. Gerber Silverberg* on the brief, for the appellant.

*James E. Boylan, Jr.,* with whom was *Gerald W. Hill* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

It was decided by the lower court in this case that the defendant received from his mother, Wilhelmina Walkling, in her life time, certain funds with the understanding that they were to be distributed after her death among her children and the children of her two deceased sons, and, in view of the defendant's failure to make such a division, he was required by the decree to pay the sums therein specified to the respective plaintiffs as the intended distributees. The payments directed by the decree totaled $4,183.32. This was $500 less than the aggregate amount of deposits withdrawn by Wilhelmina Walkling from several banks in Westminster on November 15th, 1926, and transferred to the defendant, largely in the form of indorsed checks, but partly in cash, and deposited by him in other banks to his own credit. The defendant was not charged in the decree with the duty of distributing the whole of the amount thus received from his mother, a portion of it being treated as the share to which he was entitled. The withdrawal and transfer of the deposits by the original owner occurred just before she became an inmate of a home for the aged in Baltimore. A witness, who, with the defendant's daughter, accompanied his mother to Westminster on November 15th, 1926, explained the reason for the financial change then accomplished as follows: "In order to get into this home she was supposed to give all the money she had. She did not want to do that. I don't know who objected to it, whether she did or the children or who, but she decided $1,000 was enough. So she had to get that money out of her name and she went to Westminster to get it out of her account and closed the accounts and put it in someone else's name so the home knew nothing about it, and I knew that before I went."

One of Mrs. Walkling's bank accounts was closed by her check to the General German Home for the Aged, bearing the same date as the other withdrawal checks. In the course of his testimony, the defendant answered in the affirmative an inquiry as to whether he knew, before the money was withdrawn by his mother from her bank accounts, that it was to

be done in order that the home for the aged would receive only $1,000.

There was testimony offered by the plaintiffs, and admitted over objection, as to declarations by Mrs. Walkling that she had placed her money in the hands of the defendant with the understanding that he would distribute it among her children and grandchildren after her death. To the extent to which this testimony referred to statements made when the defendant was not present, we must disregard it, in view of prior decisions of this court. *Duvall v. Hambleton & Co.*, 98 Md. 12, 55 A. 431; *Martin v. Munroe*, 121 Md. 679, 89 A. 319; *Dixon v. Dixon*, 123 Md. 44, 90 A. 846; *Jones v. Dugan*, 124 Md. 346, 92 A. 775; *Moran v. O'Brien*, 156 Md. 221, 144 A. 257; *Quillen v. Bell*, 158 Md. 677, 149 A. 462. But there is evidence of a declaration by the defendant himself which is inconsistent with his claim that he received the money in question as a gift. Two of the defendant's sisters testified that they met him in their mother's room at the home for the aged, and brought up the subject of the money which she had placed in his charge, and in which they were claiming an eventual interest. According to the testimony of one of the sisters, the defendant said: "You can't wait until mother dies to get it, can you?" The other sister's version of this statement was: "You can't wait until your mother is dead." Both testified that he further said in effect that he was going to spend the money. It was denied by the defendant that he had such a conversation with his sisters. The tenor of his testimony in other respects, however, is not sufficiently persuasive to induce the court to refuse credit to their statements because of his denial. In referring to the delivery to him of the money withdrawn by his mother from her bank accounts, the defendant made the significant remark: "Then she told me to take it to the bank and I should put it in my name." The circumstances strongly tend to disprove his assertion that he was intended to be the beneficiary of an absolute gift of his mother's entire bank deposits in excess of the amount reserved for payment to the home for the aged. Those deposits were in ten separate joint accounts, entered in the names of

Wilhelmina Walkling in trust for herself and her various children and grandchildren, respectively, subject to the order of either, the balance at the death of either to belong to the survivor. There is no suggestion in the record of any motive for altering these provisions for her numerous descendants, except to avoid the supposed necessity of assigning to the home for the aged all of the deposits, in addition to the sum which she deemed an adequate consideration for her admission. It was evidently not designed that such an expedient should prevent the ultimate division of the funds among her issue with approximate equality, and should result in a gross discrimination in the defendant's favor. The conclusion of the court below was justified by the evidence, and its decree will not be disturbed.

*Decree affirmed, with costs.*