In the Matter of the Estate of W. FERRIS HENDRY, Deceased.

Surrogate's Court, Westchester County, June 28, 1934.

*Greene & Hurd* [*Malcolm C. Law* of counsel], for the executrix.

*Edgar Hirschberg* [*Thomas P. McLaughlin* of counsel], for the State Tax Commission.

SLATER, S. This is an appeal by the executrix from the *pro forma* order entered herein on the 3d day of August, 1931.

The decedent died January 8, 1930. Consequently, the assessing of the transfer tax is under section 220 of the Tax Law, as amended by chapter 330 of the Laws of 1928.

I hold that the grounds upon which the appeal is taken are broad enough to permit the court to give consideration to the questions, *first*, whether the estate is subject to any transfer tax and, *second*, if so, whether the contract was made for an equivalent monetary value.

Section 220 of the Tax Law defines what shall be taxable by saying " a tax shall be and is hereby imposed upon the transfer of any property real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations *in the following cases*, subject to the exemptions and limitations hereinafter prescribed." Thus the tax is laid in the following cases: (1) When the transfer is by will or by the intestate laws of this State; (2) when the transfer is made by deed, grant, *bargain*, sale or gift made in contemplation of the death of the grantor or donor, or intending to take effect in possession or enjoyment at or after death; (3) where any change in the use or enjoyment of the property or the income thereof may occur in the lifetime of the grantor or donor by reason of any power reserved *to alter, or to amend, or to revoke* any transfer. Another clause was in effect at the time of the decedent's death which states that " if any one of the transfers mentioned *in this subdivision* is made for a valuable consideration, the portion of the transfer for which the grantor or vendor receives equivalent monetary value is not taxable, but the remaining portion thereof is taxable."

The law with reference to " equivalent monetary value " was enacted by chapter 430 of the Laws of 1922. It referred to it then in the following manner: " *If any one of the foregoing transfers is made,*" etc. The court said that it was ambiguous and the section was amended by chapter 143 of the Laws of 1925 and the expression " any one of the foregoing transfers " was changed to " any one of the transfers mentioned *in this subdivision.*"

In *Matter of Howell* ([1931] 255 N. Y. 211, 217) the court said: " thus, without possibility of ambiguity, limiting the class to transfers by deed, grant, bargain, sale or gift and excluding transfers by will or intestacy." At page 214 the court said: " Let it be noted that, by the terms of this statute, valuable consideration and equivalent monetary value have no application to transfers by will or intestacy. They relate solely to such transfers as are effected *in the manner described in subdivision 2.*" The court further said (at pp. 217, 218): " If they accrued under a deed, grant, bargain or sale to take effect *after the death* of the grantor or vendor and if equivalent monetary value were given therefor, the transfer is free from the imposition of tax." (See *Matter of Seitz*, 262 N. Y. 32.)

The transfer in the instant case was not made in contemplation of the death of the grantor, nor was it intended to take effect in enjoyment after his death. It falls within the terms of the third subdivision of section 220 of the Tax Law. The question for the court to solve is: What is the amount of the "equivalent monetary value" of the rights released by the wife of the decedent under the terms of the deed of trust?

The trust agreement entered into between the decedent and the Chatham Phenix National Bank and Trust Company is dated August 30, 1929. The consideration is $21,182.08. Such sum of money was placed in trust for the purpose of paying the net annual income to the decedent's wife during her natural life and, if the wife shall survive the settlor, then upon the death of the wife, the principal of the trust is to be paid to the Rockefeller Foundation.

In the ninth paragraph of the deed of trust the settlor retains the power *to modify, alter or revoke* the agreement upon the consent of the wife, Bessie S. Hendry. Upon the same day an agreement was entered into between the decedent and his wife, Bessie S. Hendry, wherein the wife undertook to release her dower on a piece of property situate in the town of Ossining, N. Y. Under the seventh paragraph of this agreement, if the parties shall live separate and apart, the decedent shall not be liable for the support and maintenance of the wife and, during the time they lived together, living expenses shall be borne *equally*.

If the contract was made for an equivalent monetary value, *i. e.*, $21,182.08, then no transfer tax is to be paid by this decedent's estate. If the monetary value reaches a sum less than the amount of the corpus of the trust, then the remaining portion, *i. e.*, the difference between the monetary value and the said $21,182.08, is taxable.

How shall the court arrive at the equivalent monetary value? The court directed that proof be taken of the cost of the annual living expenses of the decedent and his wife at the time of the making of the trust agreement. One-half of such living expenses shall be used as a basis for the cost of the maintenance of the wife by the decedent. Upon proof of the age of the husband and his expectancy of life, multiplied by the per annum cost of such maintenance, an amount will be obtained which, added to the amount of the value of her dower interest, will give the equivalent monetary value for the sum placed in trust by the decedent for his wife. The attorneys herein, after diligent effort, have failed to find cases dealing with the subject of arriving at the equivalent monetary value of the rights released in a similar type of trust agreement.

The principle of arriving at the cost of the family maintenance and allowing it to a widow of a decedent is found in the law relating to the rights of a widow's quarantine.

The testimony shows that the living expenses of the husband and wife at the date of the trust agreement were about $12,000 per annum. The testimony shows that these expenses covered such matters as food, servants, upkeep of automobiles, clothing, household expenses, and all other expenditures of money for existence in such a position in life as the husband and wife had occupied in Ossining. By limiting the living expenses to actual cost of food and raiment and upkeep of home, they would exceed $7,500 per year. Half the cost of $7,500 is $3,750 for the support of the wife and an equal amount for the support of the husband. The widow testified that her husband allowed her $300 a month in the year prior to August, 1929, for clothes. The husband was fifty-two years of age at the time and according to the American Experience Table of Mortality he had a life expectancy of nineteen and forty-nine one-hundredths years. These years of expectant life, multiplied by half the cost of living of the two persons, *i. e.*, $3,750, amounts to $73,087.50. Thus the value, dollar for dollar, of the release of support was far in excess of the sum paid for the release. The equivalent money value exceeded the sum paid for the release. There is no tax to be assessed. The appeal is sustained. The *pro forma* report of the assessor in respect to this item is set aside.

Submit order on two days' notice amending the *pro forma* order in accordance with these views.