STRANGE *et al. v.* STATE TAX COMMISSION.

(In Banc. April 13, 1942.)

[7 So. (2d) 542. No. 34961.]

Ernest Kellner, of Greenville, for appellants.

**J. H. Sumrall**, of Jackson, for appellee.

Argued orally by **Ernest Kellner**, for appellants, and by **J. H. Sumrall**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

This is an appeal from a decree of the chancery court affirming an additional inheritance tax assessment by the State Tax Commission against the estate of J. Q. Strange, deceased. The additional assessment arose out of this state of facts:

J. E. and J. Q. Strange were brothers, both near forty years of age and unmarried. J. E. was an officer of the Greenville Coca-Cola Company and J. Q. was an employee thereof on a salary of fifteen dollars per week.

On April 11, 1917, these brothers executed a written contract, reciting that J. E. Strange was the secretary and treasurer, and the owner of forty of the one hundred

shares of stock of said corporation of the par value of fifty dollars per share, and that they desired to transfer this stock to J. Q. Strange and that he become secretary and treasurer of the corporation, and agreed (1) that J. Q. would pay to J. E. $15,000, part cash and part deferred, and the stock would be assigned and transferred to J. Q.; (2) that whatever salary J. Q. should thereafter receive from the Company above $150 per month, as well as all dividends paid upon the stock, would be divided equally between them, and then this provision follows:

"It is understood and agreed that in the event of the death of either of the parties hereto, the survivor is authorized to take the forty shares of stock upon the basis of a valuation of $10,000.00 to be paid to the estate of the decedent. The option of the survivor to so purchase said stock to be exercised within sixty days from the death of the other party. For illustration, if the said J. Q. Strange is the survivor, he shall become the absolute owner of said stock by the payment of said purchase notes herein specified and $10,000.00 and his liability for the payment of the dividends and the pro rata of his salary shall terminate upon the death of said J. E. Strange. On the other hand, if J. E. Strange is the survivor, he shall have the right to purchase said stock for $10,000, and if the purchase notes herein specified are at that time unpaid, such notes shall be credited on said purchase price of $10,000."

J. Q. became secretary and treasurer at $150 per month, which was thereafter increased, so that at his death it was $600 per month.

The territory embraced within the Greenville Coca-Cola franchise included the municipality of Cleveland, Mississippi. Pidgeon, the president, and J. Q. Strange, the secretary-treasurer, and the sole stockholders, of the Greenville corporation, established, as partners in 1919, a Coca-Cola plant at Cleveland. In 1935 the Cleveland plant was incorporated, the stock being 100 shares, Pidgeon becoming president and owner of 60 shares, and

J. Q. Strange, secretary-treasurer, owning 40 shares, thereof. The Cleveland business, under both the partnership and corporate arrangement, has always been operated as an adjunct of the Greenville plant, for the more convenient and economical operation of both businesses, the Cleveland corporation never having acquired a separate franchise right for the territory served by it.

On September 30, 1930, J. E. Strange and J. Q. Strange executed a supplemental written agreement expressly making the contract of April 11, 1917, applicable to the Cleveland corporation.

J. Q. Strange died, testate, April 14, 1939, twenty-two years after the execution of the agreement. From the time of its execution to the date of his death the provisions of the agreement had been faithfully performed and carried out by both parties.

J. E. Strange, within sixty days of the death of J. Q. Strange, offered to pay to the executors the ten thousand dollars and demanded the transfer and delivery to him of said shares of stock. The executors, by petition, presented the matter to the Chancery Court of Washington County, where the estate was being administered. That court authorized them to accept that sum and transfer and deliver the stock to J. E. Strange.

The Tax Commission contends that the inheritance tax should be based upon $148,829.09, the book value of the stock, and appellant contends that the basis should be ten thousand dollars, the price named in said agreement. That is the question for decision.

Appellee says that the instrument of April 11, 1917, and the supplement thereto, are testamentary in nature and effect as to said shares of stock. It is common learning that a will vests no present interest and is revocable during the life of the maker. This instrument vested in praesenti in the survivor of these brothers the right to purchase this stock from the estate of the other. It is true the right was not to be exercised until the death of one of them, an event certain to happen but uncertain

as to time; but when it did occur such exercise was based upon a right created and vested at the time of the execution of the agreement. Neither had the right to revoke the option-to-purchase provision. This was part of the consideration of the contract. It was interwoven into the remainder of the agreement. All other provisions had been fully performed to the death of J. Q. Strange. The fact that the stock was worth at the time of his death several times its value when the contract was made does not alter the right. The parties did not know this would be true, and it is not perceived how the validity of the agreement would have been affected had they contemplated that. The possible enhancement in value accrued as much to the one as to the other. The contract must be viewed in the light of the circumstances surrounding these brothers at the time of its execution. So viewed it is clear they intended (1) this stock should be held and used for their mutual benefit during their joint lives and (2) upon the death of either the survivor should have the right to purchase it for ten thousand dollars. This is a contract—not a will.

A contract to make a will, founded upon sufficient consideration, is valid and binding. Price v. Craig, 164 Miss. 42, 143 So. 694.

Appellee further contends that the additional assessment is authorized under section 5, chapter 109, Laws of 1918 (chapter 125, Code of 1930; chapter 129, Laws of 1934), imposing a tax on the transfer of property, as a tax on the right to receive it, when the transfer is by deed, sale, gift, etc., made in contemplation of death, "without valuable and adequate consideration." Aside from whether this statute could have any retroactive effect upon this prior contract (Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Hassett v. Welch, 303 U. S. 303, 58 S. Ct. 559, 82 L. Ed. 858; Ferguson, Collector, v. Dickson, 3 Cir., 300 F. 961), it is clear the contract was founded upon "valuable and adequate consideration." The fairness and adequacy of

'the consideration must be measured as of the time the contract was executed rather than at the time the option was exercised.

The Federal Inheritance Tax Law, as regards the aspects under consideration, is in substance the same as the Mississippi statutes. The following cases, construing contracts similar to the one involved herein, under that law, are decisive of the question against the contention of appellee: Ferguson, Collector, v. Dickson, 3 Cir., 300 F. 961, certiorari denied 266 U. S. 628, 45 S. Ct. 126, 69 L. Ed. 476; Wilson v. Bowers, D. C. S. D. N. Y., 51 F. (2d) 261; Lomb v. Sugden, 2 Cir., 82 F. (2d) 166; Bensel v. Commissioner of Internal Revenue, 36 B. T. A. 246, affirmed 3 Cir., 100 F. (2d) 639; Mitchell v. Commissioner of Internal Revenue, 37 B. T. A. 1.

This being an enforcible contract, the value of the stock to the estate of J. Q. Strange was the sale price specified therein.

Reversed and remanded.