REGISTER OF WILLS FOR KENT COUNTY
*v.* BLACKWAY

[No. 193, September Term, 1957.]

2

4

*Decided May 20, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND and PRESCOTT, JJ.

*Charles B. Reeves, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellant.

*Preston P. Heck* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a declaratory judgment rendered in favor of the plaintiff-appellee by the Circuit Court for Kent County. It involves primarily a question of inheritance tax liability under Art. 81, Sec. 150 of the 1951 Code, Sec. 151 of the 1957 Code. The Circuit Court held the transfer of property here involved exempt from the tax. The facts out of which this litigation arose are stated in the opinion of Judge Horney, who heard the case in the trial court, as follows:

"The plaintiff, Herman Blackway, by his bill or petition for a declaratory decree or judgment seeks a judgment declaring that the real estate described in this proceeding is not subject to the inheritance tax imposed by Code (1951), Article 81, Section 148 *et seq.*, and for other and further relief. The defendant, the Register of Wills for Kent County, by the answer filed on his behalf by the State Law Department, denies the material allegations of the petition and alleges that the real estate, having been lawfully appraised, and the assessment of an inheritance tax having been duly made, the plaintiff owes the defendant the tax assessed in the amount of $1,384.75, and seeks a judgment therefor.

"Prior to April 27, 1952, the plaintiff, a widower, owned and operated a retail grocery and provision business in Chestertown in partnership with his son, from which he received a net income of approximately $2,500 in 1952. On or about the date mentioned he and his son sold their business, the proceeds of which netted the plaintiff $1,250, and the plaintiff took up his abode with his mother, Sarah D. Pfeffer, who was then 85 or 86, and his stepfather, Samuel T. H. Pfeffer, who was then 91 or 92. On May 2, 1953, the plaintiff's stepfather and mother, who joined in the conveyance to release her inchoate right of dower, granted four parcels of real estate located in Chestertown to the plaintiff, in fee simple, but reserved life estates unto the grantor and his wife, as tenants by the entireties, for their joint lives, and for the life of the survivor of them, in consideration of 'the sum of Five ($5.00) Dollars, and other good and valuable considerations.' The plaintiff continued to live with his mother and stepfather, and helped take care of them until their respective deaths. The mother died October 10, 1954. The stepfather died May 13, 1955.

"Subsequent to the death of Samuel T. H. Pfeffer, when it was discovered by the Register of Wills, that the grantor had reserved life estates unto himself and his wife in the real estate in question, the defendant requested the plaintiff to pay the collateral inheritance tax on such real estate. When it became evident that the plaintiff did not intend to pay the tax, the Register of Wills petitioned the Orphans' Court

of Kent County to appoint appraisers to value the real estate involved. The properties were appraised at $14,600, whereupon the tax plus a penalty and costs, aggregating $1,384.75, were assessed. The tax was not paid and this action for a declaratory judgment was instituted by Herman Blackway on November 8, 1956."

The evidence admitted by the trial court showed that Mr. Blackway had entered into an agreement with his stepfather, who agreed to convey to him the interests that were in fact deeded to him on May 2, 1953, if he would promise to come and live with the grantor and his wife, and to care and look after them both until they died. The court below found as a matter of fact that such an agreement existed, and that it had been fully executed by both sides.

The appellant contends that Art. 81, Sec. 150 (Code, 1951) (1957 Ed., Art. 81, Sec. 151) applies to this case and requires that an inheritance tax be paid by the appellee on the value of the four parcels of land deeded to him by his stepfather. That Section reads as follows:

"The taxes imposed by Sections 148 and 149 of this sub-title shall apply to all tangible or intangible property, real or personal, passing either by will or under the intestate laws of this State, or by deed, gift, grant, bargain or sale, made in contemplation of death, or intended to take effect in possession or enjoyment at or after the death of a decedent, including property in which the decedent, prior to his death, had an interest as joint tenant or tenant in common, and including property over which the decedent retained any dominion during his lifetime * * *. * * * The reservation of a beneficial interest in favor of the decedent or of a power of revocation, absolute or conditional or of a power of appointment by will or otherwise, in or over any property passing subject to the tax imposed by this sub-title, shall be deemed to constitute dominion within the meaning of this section. * * *."

He contends further that a considerable portion of the evi-

dence establishing the existence of the agreement between the appellee and his stepfather was erroneously admitted by the trial court over objections by him that its introduction into the case violated the provisions of (1) the "Dead Man's Statute", Art. 35, Sec. 3 (Code, 1951, 1957), and (2) the hearsay rule. Hence it is contended by the appellant that there is no evidence properly in the case which would sustain the finding of the lower court as to the existence of such a contract.

In this court the appellee set forth in his brief, but did not press in oral argument, the contention that the transfer of the four parcels of land in this case to the appellee, with the reservation of a life estate in the grantors, did not constitute a transfer of property by deed which was "intended to take effect in possession or enjoyment at or after the death of a decedent" within the meaning of the statute. We think that the trial judge fell into error in adopting this view. The cases which he relied upon, such as *Downes v. Safe Deposit & Trust Co.,* 157 Md. 87, 145 A. 350, and a second case reported under the same names in 163 Md. 30, 161 A. 400, arose under the Inheritance Tax Law as it stood prior to the amendment made by Ch. 124 of the Acts of 1936, which eliminated the provision under which the tax was imposed only upon property of which the decedent should die "seized and possessed." The retention of a beneficial interest, such as a life estate, is now a sufficient basis for the imposition of the tax. *Safe Deposit & Trust Co. v. Bouse,* 181 Md. 351, 360, 29 A. 2d 906. See also *Opinions of the Attorney General,* Vol. 21, pp. 782; Vol. 24, pp. 894, 895. The first of these opinions of the Attorney General was reversed in 22 *Ops. Att'y Gen. 722,* on a question of retroactivity.

However, it has been recognized in this State, as in others, that although the statute makes no express exception, transfers from the decedent which have been executed pursuant to a binding agreement in which an adequate and valuable consideration has passed to the decedent in an amount equal in value to the property transferred by him, are exempt from the tax imposed by Sec. 150. 85 *C. J. S., Taxation,* § 1147 (1), pp. 913, 914. This implied exemption is based

on the theory that it would be undesirable to tax the recipient of property when he has already paid full and adequate consideration for it. He stands more in the role of a purchaser of the property than a distributee of the decedent and, accordingly, it has been thought that the inheritance tax should not apply in such instances. This implied exemption has long been recognized in Maryland, and the rules governing and defining the situations which come within the exemption status are set out at some length in 25 *Ops. Att'y Gen.* 678 (1940). The four requirements that must be met are there described as follows: "A transfer, which is otherwise within the scope of the statute, is not taxable provided (1) it is made in fulfillment of a binding contractual obligation, (2) the obligation is based on a consideration reasonably commensurate with the value of the property (or the amount of money) transferred, (3) the consideration is not executory but is received or enjoyed by the decedent during his lifetime, and (4) the contract or agreement is clearly established and defined."

It is the position of the Register of Wills that there was no consideration passing from the appellee to the decedent that was commensurate with the value of the property transferred in this case. The concept of commensurate consideration is somewhat elusive and in practice is not always easy of application. 29 *Ops. Att'y Gen.* 215, 216 (1944).

The appellant in substance urges that in order to determine whether the consideration was adequate in this respect, the point in time at which it must be appraised is at the death of the decedent-grantor. Thus in this case he asserts that the value of the services and care provided by the appellee to the decedent and his wife during the period in which it was rendered (just over two years) was substantially less than the value of the property deeded to the appellee. He urges that two years' service was not sufficient when compared to the $14,600 figure at which the transferred property was appraised after the death of the decedent. We are thus squarely confronted with this issue: What is the proper time as of which to evaluate the consideration passing from the grantee to the decedent for purposes of determining

whether it is commensurate with the value of the property? Is it, as the appellant in effect contends, the date of death of the decedent or is it the date at which the contract or agreement was entered into by the parties? If the time of contracting is the crucial date, the value of the promise to provide care and services throughout the lives of the decedent and his wife should ordinarily be evaluated prospectively at the date of the agreement by the use of life expectancy tables and the consideration of any special factors which may exist in the particular case relating to the health of the two individuals concerned or the value of the services to be performed. Such means of evaluation are commonly accepted and in use for example in determining the present worth of annuity contracts to run for the lives of one or more persons, remainder interests, life estates and the like. We think it is clear, at least by inference, from a number of opinions of the Attorney General that the date of the agreement, rather than the date of death, is the date as of which the consideration should be valued.

In Vol. 30, (p. 229), *Opinions,* the Attorney General was asked to rule on the inheritance tax liability occasioned by a transfer of the decedent in contemplation of death. On February 2, 1945, the decedent transferred certain property to his son, who, in return, agreed to pay him $100 a week for life, and did so until his death on March 9, 1945. The Opinion stated (p. 231): "It would seem that not over six payments (or $600.00) could have been made between February 2nd and the death of the father. * * * Of course, at the time the agreement was made, the son's liability was uncertain—no one could tell exactly how long his father would live. However, the circumstances under which the conveyance was made would appear to be strong evidence that it was not contemplated that the father would live long enough to receive weekly payments equaling the full value of the property transferred." If the date of the death of the decedent were the crucial date, it would seem that the "circumstances under which the conveyance was made" would be entirely irrelevant.

Similarly, in Vol. 31, *Opinions,* 247, 248, the decedent had

transferred in contemplation of death about $3,000 worth of property to the recipient who had paid her $1,500 and agreed to care for her, and provide a home for her until her death. The Attorney General recognized that the transfer would be tax free, if supported by "an adequate and full consideration", and stated in this regard (p. 248): "Having in mind the age of the decedent at the time of the transfer and the value of the property transferred, it seems to us that you have presented to you a rather close question, much depending on the state of her health at the time of the transfer and the value of the support she was to receive."

Perhaps, the opinion appearing in Vol. 31, *Opinions,* 262, is the strongest indication that the time of contracting is the decisive date in determining the adequacy of the consideration. The decedent there executed a transfer intended to take effect at death within the meaning of the inheritance tax statute. The transferees of the property had endorsed and become accommodation parties to a note of the decedent in order to enable him to make the note acceptable to the payee. The Attorney General decided that the contingent liability thereby assumed by the transferees was a consideration commensurate with the value of the property transferred, so that it came within the implied exemption and was not subject to the inheritance tax. It is significant that the transferees never parted with one cent by reason of their becoming accommodation parties to the note. This opinion very clearly implies that the adequacy of the consideration must be viewed and determined prospectively from the date of contracting.

Authorities in other jurisdictions, both state[1] and federal,[2]

---

1. *Grounds v. Department of Taxation of Ohio,* 66 Ohio App. 192, 32 N. E. 2d 567 (1940); *In re Hendry's Estate,* 152 Misc. 312, 273 N. Y. S. 307 (1934); *Strange v. State Tax Commission,* 192 Miss. 765, 7 So. 2d 542 (1942); *In re Risvold's Estate,* 67 S. D. 552, 295 N. W. 642 (1940).

2. See Section 811 (i) of the 1939 I. R. C. (Sec. 2043(a) of the 1954 I. R. C.) and the regulations pertaining thereto, Reg. 105, Sec. 81.15. See also, *Helvering v. U. S. Trust Co.,* 111 F. 2d 576 (2d Cir., 1940), *cert.* den., 311 U. S. 678; *D. G. McDonald Trust,* 19 T. C. 672 (1953), aff'd, 225 F. 2d 621 (8th Cir., 1955); *Estate of R. M. McKeon,* 25 T. C. 697 (1956); *Greene v. United States,* 237 F. 2d 848 (7th Cir., 1956).

generally support the rule that the date of contracting is the proper time for determining the value of the consideration passing to the grantor. It is stated in 85 *C. J. S., Taxation,* p. 914, that "a transfer * * * is taxable if the value of the consideration is so disproportionately less than the value of the property transferred that the transfer is, in the light of reason or of ordinary judgment and intelligence, beneficent and donative." It would seem that the proper time to determine whether a transfer is or is not "beneficent and donative" is the time at which the transfer is made.

The Attorney General does not appear to have rendered any prior opinion clearly adopting a contrary view, and some of his rulings, as we have noted, impliedly accept the date of the transaction as controlling. Therefore, we find no inconsistency between our view and any construction of the statute in which the Legislature may be assumed to have acquiesced. Cf. *Tawney v. Bd. of Supervisors of Elections,* 198 Md. 120, 81 A. 2d 209.

A more difficult problem arises from the third requirement for the exemption which is stated in 25 *Ops. Att'y Gen.* 678, that "the consideration is not executory but is received or enjoyed by the decedent during his lifetime." The only example of a purely executory contract given in that opinion is one by which A and B agree to make wills in favor of each other. The opinion was, however, given with regard to a situation where a nephew of the decedent and the nephew's wife, at the request of the decedent, had given up their home in a city, had come to live with the decedent on her farm, had supported her and had expended both money and labor on the farm, and in return the decedent had promised to leave the farm to the nephew. This she failed to do, and the nephew established his claim in the appropriate Circuit Court, which appointed a trustee to make the conveyance. Support and services had been rendered over a period of about ten years. The opinion does not disclose the value of the farm or the value of the services or the amount of expenditures by the nephew. After noting that "the transferee has already proved his case in court" and that "it might be well nigh impossible to express the consideration in terms of dollars," the

opinion went on to say "under the facts and the court's decision we think it fair to assume that it [the consideration] was entirely adequate."

The analogy to the present case is obvious, except that here the period of care was about a year and a half during the joint lives of the transferee's mother and of his stepfather and about six or seven months more during the remainder of the life of his stepfather. The case differs from that described in 30 *Ops. Att'y Gen.* 229, above referred to, where both parties anticipated the early death of the transferor and only monetary payments were involved. Even that case, however, carries an implication that if the expected duration of the transferor's life had been greater, the exemption would have been applicable. In *Grounds v. Dept. of Taxation of Ohio, supra* (Note 1), future support and services did constitute the consideration moving from the transferee; and though the transferor lived only 33 days after the date of the deed, the consideration was held adequate and the transfer was held exempt.

Our statute does not expressly state the exemption which the Attorney General has held (properly, we think) to be implicit in it. Since there is no express statement on the subject at all, we do not have the language found in the federal estate tax or in some statutes of other states exempting transfers made for a full consideration in money or money's worth, or allowing a *pro tanto* exemption if the value of the consideration is less than that of the property transferred. Some cases have denied any *pro tanto* exemption if the consideration received is worth less than the property transferred. See 28 *Am. Jur., Inheritance, Estate and Gift Taxes,* § 183, p. 97, and Anno., 99 A. L. R. 951. The Attorney General's rulings in this State have consistently avoided a requirement of absolute equality or that the value of the consideration received by the transferor be at least 100% of the value of the property transferred. Instead, the test adopted has been whether the value of the consideration is "reasonably commensurate" with that of the property transferred. That is not the language of exact equality.

The trial judge found that there was "ample proof that the

execution of the deed was in fulfillment of a binding contractual obligation, that the services rendered by the transferee were commensurate with the value of the property transferred; that the transferor, as well as his wife, received and enjoyed the services rendered during his and her respective lives; and that the contract was sufficiently established and defined."

Confining our attention for the moment to the sufficiency of the consideration, we think that the court was not required to base its finding of sufficiency of the consideration upon hindsight by measuring the value of the consideration moving from the transferee to the transferor solely by the value of the services actually rendered. Perhaps on the basis of a year and a half of care for the joint lives of Captain and Mrs. Pfeffer and of six or seven months more during the balance of the life of the stepfather, the transferee fared well financially. It is, however, quite clear that his duties were onerous, and the evidence is also clear that there was no one else available to undertake this work on similar terms. The evidence, we think, is quite consistent with the view that the old people might reasonably have been expected to live considerably longer than they did and that the services to be rendered by the transferee would consequently have been greater. We find no indication that the agreement was designed as a means of circumventing the inheritance tax law. Under our view of the law stated above in this paragraph and on the evidence above referred to, we should not feel warranted in holding the trial court's finding on the sufficiency of the consideration to be "clearly erroneous" (Rule 886 a, Maryland Rules), even after making allowance for the fact that the burden of proof as to the sufficiency of the consideration rests upon the transferee. We do not find it necessary to determine to what extent, if any, the fact that the transferee gave up his own business as a necessary part of the agreement should be taken into account in determining the value of the consideration.

In pressing his claim that the appellee's testimony concerning the agreement made by him with his stepfather should have been excluded by the trial court, the Register of Wills

asserts that the appellee is a distributee within the scope of that word as it is used in Art. 35, Sec. 3, set out below,[3] and that hence his testimony was barred by the statute. The word "distributee" is defined as follows in Black's Law Dictionary: "An heir; a person entitled to share in the distribution of an estate. This term is admissible to denote one of the persons who are entitled, under the statute of distributions, to the personal estate of one who is dead intestate." We have been referred to no case by the appellant, nor have we been able to find one ourselves, which would justify an extension of the word to include persons in the position of the appellee in the instant case. A Register of Wills is not within the classes of persons enumerated in Sec. 3 of Article 35; neither is a stepson in the case of an intestate decedent. Accordingly, it is our opinion that this testimony was correctly admitted in evidence.

We think that the testimony of the appellee alone was enough to sustain the burden of proof as to the existence of the contract and we agree with the trial judge that it was proven in sufficient detail.

Little need, therefore, be said with regard to the admissibility of the testimony of three witnesses relating to the contract, to which the appellant objected solely on the ground that their testimony as to statements by the transferor constituted hearsay. We think that the statements of the transferor to his counsel and to the secretary for his counsel at the time of the execution of the deed were admissible under *Sanborn v. Lang,* 41 Md. 107. See also *Groff v. Rohrer,* 35 Md. 327. We see no applicability of *Misner v. Misner,*

---

**3.** "In actions or proceedings by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, and in proceedings by or against persons incompetent to testify by reason of mental disability, no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator, intestate, ancestor or party so incompetent to testify, either personally or through an agent since dead, lunatic or insane, unless called to testify by the opposite party * * *."

211 Md. 398, 127 A. 2d 547, or of *Duvall v. Hambleton & Co.*, 98 Md. 12, 55 A. 431. In the latter case a self-serving declaration of a decedent was held inadmissible to fasten an obligation upon someone else. The *Misner* case dealt with the lack of probative force of declarations of a plaintiff in a divorce suit as corroboration of his own testimony. Even if the testimony of Mrs. Flowers, the third witness to whose testimony the appellant objected on the ground of hearsay, was inadmissible, it would have been only harmless error. The decedent's statements to Mrs. Flowers by which he offered her employment on the same terms as he later offered employment to the appellee may well have been admissible to show the reasonableness of the consideration. See *McCormick on Evidence*, Sec. 268.

Being of the opinion that the transaction here sought to be subjected to the inheritance tax falls within the implied exemption developed in the several opinions of the Attorney General and apparently acquiesced in by the General Assembly, we shall affirm the judgment appealed from, even though, but for that exemption, the transfer would have been taxable under the 1936 amendment to Sec. 150 of Art. 81 of the Code (1951) (Sec. 151 of the same Article of the 1957 edition) by reason of the decedent's reservation of a life estate.

*Judgment affirmed, with costs.*